IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN TC YEH<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES BUREAU<br>OF PRISONS,<br><br>MARK S. INCH, in his official<br>capacity as Director of the United States<br>Bureau of Prisons;<br><br>MICHAEL CARVAJAL, in his official<br>capacity as Regional Director of the<br>United States Bureau of Prisons<br>Northeast Region;<br><br>and<br><br>J.E. KRUEGER, in his official<br>capacity as Warden of FCI Schuylkill<br><br>    Defendants. | Civil Action No.: _____ |

## COMPLAINT

Plaintiff, John TC Yeh ("Mr. Yeh"), by and through his undersigned counsel, files this complaint against defendants the United States Bureau of Prisons ("BOP"), Mark S. Inch, Michael Carvajal, and J.E. Krueger (collectively "Defendants") alleging as follows:

## PRELIMINARY STATEMENT

1. This lawsuit arises from Defendants' failure to provide auxiliary aids to allow effective communication as required by Section 504 of the Rehabilitation Act of 1973 ("Section

1

504"), as amended, 29 U.S.C. § 794, to Mr. Yeh, a deaf individual in Defendants' custody at the Federal Correctional Institution ("FCI") Schuylkill Satellite Camp ("FCI Schuylkill" or "Schuylkill") in Minersville, Pennsylvania.  Specifically, Defendants have denied and continues to deny Mr. Yeh with telecommunication access by refusing to provide a videophone.

2. Prior to filing the present action, Mr. Yeh exhausted the appropriate administrative proceedings.  On September 24, 2015, Mr. Yeh filed a complaint with the Equal Employment Opportunity ("EEO") to the Department of Justice Civil Rights Division alleging that FCI Schuylkill violated Section 504 and its attendant regulations when it failed to honor his request for, *inter alia*, an effective telecommunications device due to his deafness.  On March 24, 2016, Mr. Yeh received a letter of findings from EEO Officer Mina Raskin ("Letter of Findings").  The EEO Officer determined that the text-telephone services ("TTY") provided to Mr. Yeh were appropriate.  On April 14, 2016, Mr. Yeh appealed the EEO Officer's findings pursuant to 28 C.F.R. § 170(i) and requested a hearing on the matter.  Administrative hearings were held before an Administrative Law Judge ("ALJ") from January 24, 2017 - January 27, 2017 and February 28, 2017.  On April 10, 2017, the ALJ issued his recommended decision sustaining the EEO Officer's finding that the TTY services provided to Mr. Yeh were appropriate.  On April 24, 2017, Mr. Yeh sent a Letter of Exceptions to the Complaint Adjudication Officer ("CAO") pursuant to 28 C.F.R. § 170(k)(7).  On February 5, 2018, the CAO issued his decision finding that Mr. Yeh's current access to TTY does not provide him with equal participation opportunities at Schuylkill and that the BOP failed to provide evidence that videophones cause any undue administrative or financial hardships.  The CAO, however, gave the BOP an indefinite period of time to install a videophone.

2

3. Mr. Yeh brings this lawsuit to compel Defendants to immediately cease unlawful discriminatory practices and implement policies and procedures that will ensure effective communication, equal access, and an equal opportunity to participate in and benefit from Defendants' institution. Further, Mr. Yeh seeks attorneys' fees and costs.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

5. Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391 because Plaintiff and some or all of the Defendants reside in this district, and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this district.

## THE PARTIES

**A. Plaintiff**

6. Plaintiff, John TC Yeh, (Federal Register No. 50807-037) is profoundly deaf and a qualified individual with a disability within the meaning of Section 504 of the Rehabilitation Act.

7. Mr. Yeh cannot discriminate sounds to understand speech and cannot use a standard telephone.

8. Mr. Yeh's primary language is American Sign Language ("ASL").

9. Mr. Yeh is a federal inmate currently in Defendants' custody at FCI Schuylkill Satellite Camp.

**B. Defendants**

10. The BOP is the federal executive agency responsible for the supervision and custody of over 200,000 inmates and detainees, including Mr. Yeh.

11. The BOP is headquartered in Washington, D.C.

12. FCI Schuylkill is a correctional complex in Minersville, Pennsylvania, controlled and operated by the BOP.

13. Mark S. Inch ("Mr. Inch") is the Director of the BOP. He is responsible for the oversight and management of the BOP's 115 institutions and for the safety and security of the more than 200,000 inmates under the agency's jurisdiction. Specifically, he is also responsible for the BOP's policies and practices regarding the treatment of and services provided to inmates with disabilities. He is aware or should be aware of the BOP's and FCI Schuylkill's policies and practices regarding inmates with disabilities, and more specifically, Defendants' constant failure to provide the required auxiliary aid to Mr. Yeh at FCI Schuylkill to allow Mr. Yeh telecommunication access to his counsel, friends, and loved ones. He is sued in his official capacity.

14. Michael Carvajal ("Mr. Carvajal") is the Regional Director of the BOP's Northeast Region, which provides oversight, technical assistance and other types of operational support to 18 federal institutions and their complexes in the Northeast Region, including FCI Schuylkill. He is aware or should be aware of the BOP's and FCI Schuylkill's policies and practices regarding inmates with disabilities, and more specifically, Defendants' constant failure to provide the required auxiliary aid to Mr. Yeh at FCI Schuylkill to allow Mr. Yeh telecommunication access to his counsel, friends, and loved ones. He is sued in his official capacity.

15. J.E. Krueger ("Warden Krueger") is the warden of FCI Schuylkill and is responsible for the day-to-day operations of the prison. He is aware or should be aware of the BOP's and FCI Schuylkill's policies and practices regarding inmates with disabilities, and more specifically, Defendants' constant failure to provide the required auxiliary aid to Mr. Yeh at FCI

Schuylkill to allow Mr. Yeh telecommunication access to his counsel, friends, and loved ones. He is sued in his official capacity.

16.     At all times relevant to this action, Mr. Inch, Mr. Carvajal, and Warden Krueger were acting pursuant to their authority as an official, agent, contractor, or employee of the United States.

## FACTUAL ALLEGATIONS

17.     Mr. Yeh began serving his prison sentence on January 30, 2012 at FCI Schuylkill where he has remained continuously.  His current projected release date is October 14, 2019.

18.     Mr. Yeh's primary language is American Sign Language ("ASL").  ASL is a complex language that employs signs made with the hands, facial expressions and body language.  Nonverbal cues, such as facial expressions, speed of signing and size of signing space convey important information such as emotion and implications – just like speed and inflection in speech convey such important information.  ASL is distinct from English – it is not English via hand signs.  In fact, ASL has its own vocabulary and its own rules for grammar and syntax.

19.     As a deaf person who primarily communicates using ASL, Mr. Yeh cannot use the telephone in the same way as a hearing person.

   a.   **Telecommunications at FCI Schuylkill**

20.     Telecommunications is one of the services offered by FCI Schuylkill to its inmates.  BOP Program Statement 5264.08 "Inmate Telephone Regulations".

21.     BOP provides that "[a]ll inmates will be afforded the opportunity to maintain family and community contact via the telephone consistent with institution and community safety."  Paragraph 3, BOP Program Statement 5264.08 "Inmate Telephone Regulations".

22. Absent limited exceptions due to security and discipline, each inmate is granted 300 minutes of telephone use per calendar month. Paragraph 8(f), BOP Program Statement 5264.08 "Inmate Telephone Regulations". They are allowed 5 completed calls per day if they have sufficient minutes remaining. Paragraph 11, FCI Institution Supplement SCH 52604.08G "Telephone Regulations for Inmates".

23. Inmates who do not have restricted or revoked telephone privileges are allowed to access the telephone nearly all of their waking hours, aside from working hours if any, subject to time limits and number of calls per particular time period. Telephones are generally available for hearing inmates from 6:00am to 11:30pm every day. Paragraph 5, FCI Institution Supplement SCH 52604.08G "Telephone Regulations for Inmates". No advance preparation is required for such inmates to place calls – they can walk up to an available telephone and call anyone on their approved list.

24. FCI Schuylkill offers telephones for its inmates all over the complex, including in both housing units, each Camp Dormitory and the Camp Administration Building. Paragraph 5, FCI Institution Supplement SCH 52604.08G "Telephone Regulations for Inmates".

25. Hearing family members and friends of inmates in FCI Schuylkill, in general, can receive telephone calls from hearing inmates not subject to restrictions, within a wide scope of time per week. They are able to communicate directly with the inmate in their primary language, without being required to purchase a specific telephone to do so.

### b. Telecommunication Auxiliary Aid for the Deaf

26. The "TDD" or "TTY"[1] is a 60-year-old technology known formally as a "teletypewriter" that makes and receives text-based telecommunication calls over telephone

---

[1] TDD is also known as teletypewriter ("TTY") and as text telephone ("TT"). For purpose of this matter, these acronyms may at times be used interchangeably.

6

lines. The TTY is a telephone device equipped with a keyboard and a display screen. For two parties to have a direct TTY conversation, each party must have a TTY machine.

27. TTYs may be used by individuals who are deaf or hard of hearing to make and receive text-based telecommunication calls over telephone lines as well as others who wish to communicate with such individuals.

28. A TTY conversation takes significantly longer than a traditional voice telephone call because it takes much longer to type out and read the messages rather than speak and listen.

29. Written or typed English does not include important linguistic information such as emotion, tone, or inflection – each of these affects the speaker's intended meaning and message significantly.

30. In the last 15 years, videophones and free or low-cost internet-based video links (collectively, "videophones") have replaced TTYs as the mode of telecommunication among deaf and hard of hearing people. Videophones allow deaf individuals to communicate with one another directly in their primary language, ASL. When using a videophone, callers can see each other, usually over an internet connection. Conversing directly in ASL allows deaf people to share important linguistic information such as emotion, tone, or inflection and to convey the intended meaning and message. Additionally, a videophone conversation is faster and more efficient than a TTY conversation. Not only does it take longer to type out the message and wait for the scrolling text but also, due to the outmoded nature of the TTY technology, messages that are typed on a TTY may often come out garbled and indecipherable further disrupting and delaying the call. Moreover, unlike a videophone user, a TTY requires one-way communication and turn-taking, so that a TTY user cannot interrupt the other party's typing as parties usually do in a free-flowing conversation because that may cause garbled text. By contrast, the videophone

allows for two-way communications, which ensures a call that is more functionally equivalent to a traditional telephone call.  As a result, many deaf households in the past ten or fifteen years, including most of Mr. Yeh's deaf family members and loved ones, no longer own a TTY and rely exclusively on videophones for telecommunication.

31. Deaf individuals using videophones can also connect to a Video Relay Service ("VRS") to place calls to hearing people.  The deaf caller is routed to an interpreter who receives the phone number of the party they are trying to reach.  The interpreter then relays the conversation from spoken English to sign language, and vice versa.

### c. TTY at FCI Schuylkill

32. FCI Schuylkill has only one TTY device, stored in the camp administration office, which is locked when not in use.  FCI Schuylkill does not have any videophones.

33. The TTY at FCI Schuylkill is incompatible with the inmate telephones.  TTY users at FCI Schuylkill are limited to the availability of select non-inmate telephones not located in the housing units or dormitory.  It is not possible for inmates to make outgoing calls using those non-inmate telephones.  Accordingly, Mr. Yeh is unable to make outgoing calls.

34. In light of these paralyzing limitations, FCI Schuylkill staff constructed a cumbersome process for placing TTY calls.  First, Mr. Yeh must make prior arrangements with the intended outside party and with staff members to schedule a TTY call.  Because the TTY cannot be used with any of the inmate telephones, Mr. Yeh is at the mercy of staff members' availabilities to make time to arrange for him to use the TTY.  Second, on the scheduled date and time, Mr. Yeh and a guard are placed in a room with a non-inmate telephone to wait for the incoming TTY call.  Third, the outside party must call in to the prison's main number and ask the officer to transfer their call.  The officer answering the call would then transfer the call to the

8

appropriate phone where Mr. Yeh is waiting.  Next, the guard accompanying Mr. Yeh would answer the phone, speak with the outside party, and then place the telephone on the TTY machine.  The outside party would then place their telephone on their TTY machine.

35.  To communicate with the officer at the main prison line and with the guard accompanying Mr. Yeh, one must be able to hear and speak.  Because there is no way to call Mr. Yeh without the ability to hear and speak, Mr. Yeh's deaf family members and loved ones are unable to contact Mr. Yeh via this convoluted process.

36.  Mr. Yeh has a deaf wife, a deaf sibling, and two of his three children are deaf.  He has been unable to communicate with them via telephonic means during his incarceration because they do not own TTYs and instead use videophones.

37.  Because Mr. Yeh does not have access to a videophone, he is unable to stay in communication with his deaf loved ones outside the institution and the deaf community in general, including his deaf attorneys.

38.  Regular access to a videophone and Video Relay Services would ensure a comparable and functionally equivalent telephonic access to that of other inmates and allow Mr. Yeh to remain in contact with his family, friends, and attorneys outside of FCI Schuylkill.

## CLAIM FOR RELIEF

### COUNT I: DISCRIMINATION ON THE BASIS OF A DISABILITY IN VIOLATION OF THE REHABILITATION ACT AGAINST DEFENDANT (29 U.S.C. § 794)

39.  Mr. Yeh repeats and re-alleges each and every allegation above as if fully set forth herein.

40.  Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 794 *et seq.* (hereinafter "Rehabilitation Act"), provides that "[n]o otherwise qualified individual with a

disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity . . . conducted by any Executive agency . . . ." 29 U.S.C. § 794(a).

41. Mr. Yeh is deaf and, as such, is a qualified individual with a disability within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(20).

42. Mr. Yeh is otherwise qualified and eligible to participate in a commensurate way in all programs and activities provided to all inmates at FCI Schuylkill.

43. The BOP is an executive agency within the meaning of 29 U.S.C. § 794(a).

44. The operations of the BOP, including the departments, agencies, programs and instrumentalities at FCI Schuylkill such as inmate telephone services, are "program[s] or activit[ies] conducted by an Executive Agency" within the meaning of 29 U.S.C. § 794(a).

45. At all times relevant to this action, the Rehabilitation Act was in full force and effect in the United States, and Mr. Yeh had and has a right to not be subjected to discrimination on the basis of his disability by Defendants. 29 U.S.C. § 794(a).

46. The Department of Justice's ("DOJ") regulations implementing Section 504 of the Rehabilitation Act prohibit Defendants from providing a qualified deaf person "with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others." 28 C.F.R. § 39.130(b)(1)(iii).

47. The DOJ's regulations mandate that the BOP "shall furnish appropriate auxiliary aids where necessary to afford a handicapped person an equal opportunity to participate in, and enjoy the benefits of, a program or activity conducted by the agency." 28 C.F.R. § 39.160(a)(1).

48. The DOJ's regulations additionally mandate that "[i]n determining what type of auxiliary aid is necessary, the agency shall give primary consideration to the requests of the handicapped person."  28 C.F.R. § 39.160(a)(1)(i).

49. Auxiliary aids include, but are not limited to, telecommunication devices for deaf and hard of hearing individuals.  28 C.F.R. § 39.103.

50. Defendants' failure to provide Mr. Yeh the appropriate auxiliary aid to ensure effective telecommunication access has denied and continues to deny Mr. Yeh, on the basis of his deafness, the same access to Defendants' programs and activities as afforded to hearing individuals.

51. Defendants have continually failed to provide Mr. Yeh with telecommunication access to connect with his family members and loved ones by refusing to make a videophone available at FCI Schuylkill.

52. The failure to provide the appropriate auxiliary aid and the failure to provide comparable access to the programs and activities are policies, regular practices, and/or customs of Defendants.  These failures are ongoing and continue to this date.

53. As a proximate result of Defendants' violations of the Rehabilitation Act, Mr. Yeh has suffered, and continues to suffer, discrimination, unequal treatment, exclusion (including exclusion from Defendants' services, benefits, activities, programs and privileges), financial loss, loss of dignity, frustration, humiliation, emotional pain and suffering, anxiety, trauma, embarrassment, unnecessary loss of rights and privileges, including unnecessary disciplinary measures, and serious injury to his health and mental health, including the injuries specified herein.

54. Defendants' failure to comply with the Rehabilitation Act has resulted in harm to Mr. Yeh, and Defendants are liable to Mr. Yeh for harms suffered. Defendants' failure to comply with the Rehabilitation Act will continue to result in harm to Mr. Yeh as Mr. Yeh will be in the custody or supervision of the BOP at FCI Schuylkill and will continue to seek to use the services, benefits, activities, programs and privileges provided by Defendants and to which he is entitled. This harm will continue unless and until Defendants are ordered by this Court to modify their policies, practices and procedures as demanded by the Rehabilitation Act.

**RELIEF**

WHEREFORE, Mr. Yeh respectfully requests that this Court provide the following relief:

    a.    Issue a declaratory judgment that Defendants' policies, procedures, and practices have violated and continue to violate Section 504 of the Rehabilitation Act of 1973;

    b.    Enjoin Defendants from any policy, procedure, or practice that will deny Mr. Yeh equal access to and an equal opportunity to participate in and benefit from Defendants' services and programs or that denies Mr. Yeh effective telecommunication;

    c.    Order Defendants to promulgate and comply with policies and procedures to ensure that Defendants does not discriminate in the future against Mr. Yeh and other individuals who are deaf and hard of hearing;

    d.    Order Defendants to train all its employees about Mr. Yeh's rights and the rights of individuals who are deaf or hard of hearing and about Defendants' policy and procedures for providing auxiliary aids and services, particularly for providing videophones;

    e.    Enter such injunctive and/or declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202, and rules 57 and 65 of the Federal Rules of Civil Procedure against Defendants and in favor of Mr. Yeh as it deems appropriate to remedy past violations of the laws of the United

States and to prevent future violations of the same, including by ordering Defendants to provide full and equal access to appropriate and effective telecommunication devices for the deaf, such as full and equal access to a videophone.

  f. This Court retain jurisdiction of the matter until Defendants demonstrate that they have fully complied with the orders of this Court, and that there is a reasonable assurance that Defendants will continue to comply in the future absent continuing jurisdiction;

  g. Judgement against Defendants in favor of Mr. Yeh for the costs of litigation, including reasonable attorneys' fees and costs; and

  h. Award Mr. Yeh any and all other relief that may be necessary and appropriate.

Respectfully submitted,

 */s/ Mary Vargas*
Mary Vargas
Stein & Vargas, LLP
840 First Street NE, Third Floor
Washington, DC 20002
Phone: (202) 248-5092
Fax: (888) 778-4620
mary.vargas@steinvargas.com

Anna Bitencourt*
National Association of the Deaf
Law and Advocacy Center
8630 Fenton Street, Suite 820
Silver Spring, MD 20910
Phone: (301) 587-1788
Fax: (301) 587-1791
anna.bitencourt@nad.org

*Attorneys for Plaintiff*

Date:  May 3, 2018  *pro hac vice motion to be filed promptly