DJF:MJB

## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOHN TC YEH,** | : | NO. 3:18-CV-00943 |
| **Plaintiff,** | : | |
| | : | **(Munley, J.)** |
| **v.** | : | **(Carlson, M.J.)** |
| | : | |
| **UNITED STATES BUREAU OF** | : | |
| **PRISONS; MARK S. INCH,** | : | |
| **Director of the BOP; MICHAEL** | : | |
| **CARVAJAL, Regional Director of** | : | |
| **The BOP, Northeast Region;** | : | |
| **J.E. KRUEGER, Warden of** | : | |
| **FCI Schuylkill,** | : | |
| **Defendants.** | : | **Filed Electronically** |

## BRIEF IN SUPPORT OF MOTION
## FOR JUDGMENT ON THE PLEADINGS

Defendants United States Bureau of Prisons (BOP), Hugh J. Hurwitz, Acting

Director of the BOP, J. Ray Ormond, NE Regional Director, and Scott Finley,

Warden of Federal Correctional Institutional in Schuylkill, Pennsylvania (FCI

Schuylkill), respectfully submit this brief in support of their motion for judgment on

the pleadings and to dismiss Plaintiff John Yeh's complaint.   The Rehabilitation Act

does not provide for a private cause of action against a federal agency conducting its

own programs, like the BOP here.   Additionally, this matter is moot, as Mr. Yeh has

access to a videophone.   See 01/04/2019 Order (Doc. No. 58) (adopting

12/12/2018 Report & Recommendation) (Doc. No. 57)).   Lastly, Mr. Yeh sued the

wrong federal defendants, and this Court should grant judgment on the pleadings on their behalf.

## I.    Procedural History

Plaintiff John TC Yeh, a deaf inmate at FCI Schuylkill, brings a claim purportedly per Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, as he seeks injunctive relief for the BOP to install a videophone so that he can have telecommunications access.   (Doc. No. 1 ¶ ).   On May 3, 2018, Mr. Yeh filed a motion for preliminary injunction against all defendants at the same time he filed his complaint.   (Doc. No. 2).   On July 24, 2018, the Government opposed the motion for preliminary injunction, arguing the Court should deny the motion because the Rehabilitation Act did not provide a claim for relief, he named the wrong defendants, and his claim was moot. (Doc. No. 24).   On August 27, 2018, Defendants filed Affirmative Defenses and an Answer to the Complaint.   (Doc. No. 35).

On August 10, 2018, the Court held a preliminary injunction hearing, at which time, Mr. Yeh called no witnesses, and presented no evidence.   (Doc. Nos. 20, 28). Defendants, on the other hand, presented evidence that Mr. Yeh's complaint was moot, as a videophone was in the process of being installed at the institution.   (Doc. No. 28).

Over the next several months, Defendants presented status reports to the Court demonstrating that it was complying with a DOJ administrative order to install

2

the videophone.   (Doc. Nos. 24, 34, 36, 40-41, 45, 48-51, 54).   On December 4, 2018, Defendants reported to the Court that the videophone had been installed per the DOJ administrative order.   (Doc. No. 54).   On December 11, 2018, the parties filed a joint status report.   (Doc. No. 55).   Defendants argued again that the matter was moot and this Court should close the case, but Mr. Yeh disagreed.   (Doc. No. 55).

On December 12, 2018, the Court ordered Defendants to file an early dispositive motion by January 2, 2019.   (Doc. No. 56).   On December 12, 2018, the Honorable Martin C. Carlson issued a Report and Recommendation, recommending that the motion for preliminary injunction be denied because the videophone was installed.   (Doc. No. 57).   The report also noted that "successful videophone installation was entirely dependent action by non-parties."   (Id. at 12).   The report did not address whether Mr. Yeh could even bring a Rehabilitation Act claim against a federal agency conducting its own program.   See id.   On January 4, 2019, this Court adopted Judge Carlson's report. (Doc. No. 58).

On December 27, 2018, Chief Judge Conner ordered all civil matters stayed because of the lapse of appropriation of funds to the Department of Justice.   See In re: Certain Matters Pending Before All of the Various Courts of the United States District Court for the Middle District of Pennsylvania, Misc. No. 1:18-MC-0729 (12/27/2018).   On January 30, 2019, Chief Judge Conner lifted the stay of all civil

matters, and ordered that all case management deadlines be extended by the number of days the stay was in effect, 34 days.   See id.

On February 5, 2019, Defendants filed a motion for judgment on the pleadings and motion to dismiss for lack of jurisdiction.   (Doc. No. 59).   This brief supports that motion.

## II.    Factual Background

Mr. Yeh, a federal inmate serving a one hundred eight (108) month sentence imposed by the U.S. District Court for the District of New Jersey for Conspiracy to Commit Mail Fraud, has a projected release date of October 14, 2019, via good conduct time release.   See Declaration of Erin Frymoyer (Ex. 1).

On March 13, 2015, Mr. Yeh submitted Administrative Remedy 812650-F2, requesting a videophone, sign language interpreters, and auxiliary aids such as vibrating alarm clocks, pagers, vibrating bed devices, and message boards.   The Warden denied his request on March 25, 2015.   See Attach C to Ex. 1.   Mr. Yeh appealed to the Regional Director, filing Administrative Remedy 812650-R1 on March 30, 2015, who denied his appeal. See Attach D. to Ex. 1.   Finally, on May 12, 2015, Mr. Yeh appealed to BOP's Central Office, filing Administrative Remedy 812650-A1, and that appeal was denied on July 1, 2015.   See Attach. E to Ex. 1.

On September 24, 2015, per the procedures set forth in 28 C.F.R. § 39.130(a), .160, and .170, Mr. Yeh filed an administrative complaint, requesting a videophone,

4

and other accommodations.   See Admin. Order (Ex. B) at 2.   An administrative

hearing was conducted in early 2017.   See id.   On April 17, 2017, the Administrative

Law Judge granted Mr. Yeh's request for accommodation, including interpretive

services, but denied Mr. Yeh's request for a videophone at FCI Schuylkill.   See id. at

13-14.

On February 5, 2018, the Acting Complaint Adjudication Officer for the

Department of Justice issued a final decision; and, for the first time in these

proceedings, ordered that Mr. Yeh's access to TTY did not provide him with equal

participation opportunities.   See id. at 10.

Hence, the BOP was directed to provide a videophone or other device that

would permit Mr. Yeh to communicate with other hearing impaired individuals using

ASL.   The Adjudication Officer cautioned Mr. Yeh that

> actual implementation of videophone use will likely require significant
> patience and adjustment. BOP has significant responsibilities for
> assessing the available budget in the present and coming fiscal year, for
> determining the feasibility of installing dedicated lines at FCI Schuylkill
> or at another institution, and for coordinating a waiver from authorities
> at the Department of Justice. These and other attendant matters may
> take some time.

Id. at 20.

Over the next several months, the BOP worked diligently to comply

with the Administrative Order, including structural changes and electrical

preparation for a third-party to install a videophone. (Doc. Nos. 24, 34, 36, 40-41, , 45, 48-51, 54).   The third-party installed the videophone, and Mr. Yeh used the videophone on November 27, 2018.   (Doc. No. 54).

### Allegations in the Complaint

Mr. Yeh alleges that telecommunications are offered by FCI Schuylkill. See Compl. (Doc. No. 1) ¶ 20.   Citing to a BOP Program Statement and an FCI Schuylkill Institutional Supplement, Mr. Yeh alleges that inmates are granted 300 minutes of telephone use per calendar month and allowed 5 complete calls per day if they have sufficient minutes remaining.   See id. ¶ 22 (citing P.S. § 5264.08 (Inmate Telephone Regulation); FCI Institutional Supplement SCH 52604.08G (Telephone Regulations for Inmates)).   At FCI Schuylkill, phones are generally available from 6:00 a.m. to 11:30 p.m., and these phones are all over the complex in both housing units, the camp, and the camp administration building.   See id. ¶ 23-24. (citing FCI Institutional Supplement SCH 52604.08G (Telephone Regulations for Inmates)).   Family and friends of hearing inmates at FCI Schuylkill can receive calls from inmates without restrictions and can communicate directly in their primary language. See id. ¶ 25.

Whereas, deaf inmates have access to only one Teletypewriter (TTY) system at FCI Schuylkill, which is located in the camp administration building.

6

See id. ¶ 32.   A TTY system makes and receives text-based communications calls over telephone lines.   It has a keyboard for typing and each party must have a TTY for the call to go through.   See id. ¶ 26.   At FCI Schuylkill, the TTY is incompatible with other phones at the institution, and deaf inmates can only use the TTY device outside the housing units.   See id. ¶ 33.

FCI Schuylkill has placed the following limitations on Mr. Yeh's use of TTY: 1) Mr. Yeh has to make prior arrangements prior to making any call and thus he is at mercy of the staff's availability; 2) a correctional officer and Mr. Yeh must wait in a room for a call on the non-inmate TTY telephone; and 3) the party making the call to Mr. Yeh must first call the institution's main number and then be asked to be transferred to the correctional officer waiting with Mr. Yeh, the officer then places the phone on the TTY machine and the party making the call would also place the call on his or her own TTY machine. See id. ¶ 34.   Because Mr. Yeh's family are deaf, they cannot abide by the connections requirements of FCI Schuylkill, and they do not have a TTY machine.   See id. ¶¶ 34-35.

### III.    Question Presented

Whether this Court should grant Defendants' motion because Mr. Yeh cannot bring an action under the Rehabilitation Act; his claims are moot; and failed to name the proper defendants in this case.

**Suggested Answer:** Affirmative.

### IV.    Legal Standards

### A. <u>Motion to Dismiss for Lack of Jurisdiction – Rule 12(b)(1)</u>

When ruling on a motion brought pursuant to Fed. R. Civ. P. 12(b)(1), a court may treat the motion as a factual challenge, which does not require a court to accept the allegations of a complaint as true.   <u>See</u> <u>Gould Elecs. Inc. v. United States</u>, 220 F.3d 169, 178 (3d Cir. 2000); <u>Mortensen v. First Fed. Sav. & Loan Ass'n</u>, 549 F.2d 884, 891 (3d Cir. 1977).   The court may weigh any evidence to satisfy itself that it does or does not have subject matter jurisdiction, but it cannot consider the merits of an action until it is satisfied that the dispute falls within the class of cases or controversies to which Article III, Section 2 of the United States Constitution has extended the judicial power of the United States.   <u>See</u> <u>Steel City Co. v. Citizens For Better Env't</u>, 523 U.S. 83, 102 (1998).

"When a motion under Rule 12 is based on more than one ground, the court should consider the [subject matter jurisdiction challenges] first, because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses and

objections become moot." In re Corestates Trust Fee Litig., 837 F. Supp. 104, 105

(E.D. Pa. 1993).

## B. Article III Standing

Article III of the Constitution of the United States requires a plaintiff to have

standing to bring a lawsuit in federal court. U.S. Const. art. III, § 2. "The standing

requirement of Article III of the United States Constitution is 'immutable' and 'the

irreducible constitutional minimum' for [this Court] to have jurisdiction over a case or

controversy." See J.T. ex rel. A.T. v. Dumont Public Schs., 533 F. App'x 44, 48 (3d

Cir. 2013) (quoting Fair Hous. Council of Suburban Phila. v. Montgomery

Newspapers, 141 F.3d 71, 74 (3d Cir.1998) (internal quotation marks omitted in

original)).

The United States Supreme Court has held:

> Article III of the Constitution grants the Judicial Branch authority to
> adjudicate "Cases" and "Controversies." In our system of government,
> courts have "no business" deciding legal disputes or expounding on law
> in the absence of such a case or controversy. DaimlerChrysler Corp. v.
> Cuno, 547 U.S. 332, 341 (2006). That limitation requires those who
> invoke the power of a federal court to demonstrate standing—a
> "personal injury fairly traceable to the defendant's allegedly unlawful
> conduct and likely to be redressed by the requested relief." Allen v.
> Wright, 468 U.S. 737, 751 (1984). We have repeatedly held that an
> "actual controversy" must exist not only "at the time the complaint is
> filed," but through "all stages" of the litigation. Alvarez v. Smith, 558
> U.S. 87, 92 (2009) (internal quotation marks omitted); Arizonans for
> Official English v. Arizona, 520 U.S. 43, 67 (1997) ("To qualify as a case
> fit for federal-court adjudication, 'an actual controversy must be extant
> at all stages of review, not merely at the time the complaint is filed'"

9

(quoting Preiser v. Newkirk, 422 U.S. 395, 401 (1975))).

Already, LLC v. Nike, Inc., 568 U.S. 85, 980 (2013) (noting a case is moot "if the dispute 'is no longer embedded in any actual controversy about the plaintiffs' particular legal rights'") (citing Alvarez, 558 U.S. at 93).

To demonstrate he has standing, a plaintiff must show "'(1) [an] injury-in-fact . . . that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of; and (3) [a likelihood] . . . that the injury will be redressed by a favorable decision.'" McNair v. Synapse Group, Inc., 672 F.3d 213, 223 (3d Cir. 2012) (quoting Danvers Motor Co., Inc. v. Ford Motor Co., 432 F.3d 286, 290–91 (3d Cir.2005)).

The Supreme Court has held that, in determining standing, a district court must consider other factors, known as prudential considerations. See Philips Petroleum Co. v. Shutts, 472 U.S. 797, 804 (1985).   In evaluation these considerations, a district court must require a plaintiff to 1) assert his own legal interests, and not that of a third party, see id.; 2) not adjudicate an abstract question of wide public significance or an otherwise "generalized grievance," Sullivan v. Syracuse Housing Auth., 962 F.2d 1101, 1106 (2d Cir. 1992) (quoting Warth v. Seldin, 422 U.S. 490, 499–500 (1975); and 3) show that the statute, rule, or constitutional provision was intended to protect his interests or

10

he was otherwise in the law's "zone of interests," <u>Valley Forge Christian College v. Americans United Separation of Church and State, Inc.</u>, 454 U.S. 464, 475 (1982) (quoting <u>Association of Data Processing Service Orgs., Inc. v. Camp</u>, 397 U.S. 150, 153 (1970)).   <u>See</u> <u>Wheeler v. Traverler's Insurance Co.</u>, 22 F.3d 534, 538 (3d Cir. 1994) (holding the plaintiff did not have standing to assert "complex claims" regarding insurer and Medicare).

### C. <u>Motion for Judgment on the Pleadings – Rule 12(c)</u>

This Court analyzes a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure, like the one filed here, in the same fashion as it would analyze a motion filed under Rule 12(b)(6).   <u>See</u> <u>Revell v. Port Auth. Of N.Y., N.J.</u>, 598 F.3d 128, 134 (3d Cir. 2010).

Thus, "courts 'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'"   <u>Eid v. Thomspson</u>, 740 F.3d 118, 122 (3d Cir. Jan. 10, 2014) (citations omitted).   "[T]he tenet that a court must accept as true all the allegations contained in a complaint[, however,] is inapplicable to legal conclusions." <u>George v. Rehiel</u>, 738 F.3d 562, 581 (3d Cir. 2013) (citations omitted).

As the Supreme Court held in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007), a plaintiff is required to provide the grounds for relief which

"requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

The Supreme Court opined that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' . . . Where a complaint pleads facts that are 'merely consistent with' the defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 557). In extending Twombly, the Supreme Court instructed that plaintiff's allegations must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusations." Id.

The Third Circuit has directed district courts to conduct a two part analysis when considering a motion to dismiss for failure to state a claim:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citations omitted).

12

When ruling on a motion to dismiss, a district court may consider, among other matters, "'matters incorporated by reference or integral to the claim [and] items subject to judicial notice.'"    Law v. Correctional Care, Inc., Civ. A. No. 3:13-cv-2407, 2014 WL 1767129, at *4 (M.D. Pa. May 2, 2014) (quoting Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006)).

## V.    Argument

### A. The Rehabilitation Act of 1973 Does Not Provide A Remedy For Mr. Yeh, and Thus This Court Has No Jurisdiction Over His Claims

#### 1.    This Court does not have jurisdiction to hear this Rehabilitation Act claim, as the statute does not offer relief in an action filed in federal court

The United States Supreme Court has noted:

A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text, see, e.g., United States v. Nordic Village, Inc., 503 U.S. 30, 33–34, 37 (1992), and will not be implied, Irwin v. Department of Veterans Affairs, 498 U.S. 89, 95 (1990).

Lane v. Pena, 518 U.S. 187, 192 (1996).   This Court must strictly construe whether sovereign immunity has been waived in terms of scope in favor of the United States. See id. (citing United States v. Williams, 514 U.S. 527, 531 (1995); Library of Congress v. Shaw, 478 U.S. 310, 318 (1986); Lehman v. Nakshian, 453 U.S. 156, 161 (1981)).

The United States has not waived its sovereign immunity so that an inmate may

sue the Bureau of Prisons under the Rehabilitation Act in federal court.

When determining whether a statute applies, courts look at the actual language of that statue.   Section 504 of the Rehabilitation Act of 1973 (referred below as "section 504" or "Rehabilitation Act"), as amended, provides in pertinent part:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service. The head of each such agency shall promulgate such regulations as may be necessary to carry out the amendments to this section made by the Rehabilitation, Comprehensive Services, and Developmental Disabilities Act of 1978.

29 U.S.C. § 794(a) (emphasis added).   Importantly, section 504 prohibits discrimination in two types of federal matters: a nonfederal entity that receives financial assistant from a federal agency or a federal agency that conducts its own program.   See id.   The Bureau of Prisons is the later, conducting its own program, rather than providing or receiving financial assistance.

The distinction between nonfederal entities receiving federal funding and federal agencies conducting their own programs is important because section 505(a)(2) of the Rehabilitation Act provides for the remedies for violations of section 504.   Section 505(a)(2) provides:

> The remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.) (and in subsection (e)(3) of section 706 of such Act (42 U.S.C. 2000e-5), applied to claims of

14

discrimination in compensation) shall be available to any person aggrieved by any act or failure to act by <u>any</u> <u>recipient</u> <u>of</u> <u>Federal</u> <u>assistance</u> <u>or</u> <u>Federal</u> <u>provider</u> <u>of</u> <u>such</u> <u>assistance</u> under section 794 of this title.

29 U.S.C. § 794a(a)(2) (emphasis added).

The Supreme Court requires courts to follow the general rule that "where in the same statute Congress expressly provides a remedy for one violation but not another, the omission is considered intentional." <u>See</u> <u>Kinneary v. New York,</u> 358 F. Supp. 2d 356, 359-60 (S.D.N.Y. 2005) (citing <u>BFP v. Resolution Trust Corp.,</u> 511 U.S. 531, 537 (1994)). The remedy found in Section 505 (and ultimately in Title VI) is for discrimination involving federal assistance, and not regarding Executive agencies conducting their own programs. <u>See</u> <u>id.</u>[1] Section 501, a separate subsection of the Rehabilitation Act, sets forth the remedies, procedures, and rights concerning employment claims. 29 U.S.C. §794a(a)(1).

The Supreme Court clarified this axiom in <u>Lane v. Pena</u>, 518 U.S. 187, 196-97 (1996), when, in a claim for monetary damages, it held that sections 504 and 505 did not waive sovereign immunity for claims regarding Executive agencies conducting their own programs. <u>See</u> <u>id.</u> Lane, a former merchant marine sued the Department

---

[1] In 1979, the United States Supreme Court held that Title IX, like Title VI, implicitly authorizes a private cause of action against nonfederal recipients of federal funding. <u>Cannon v. University of Chicago</u>, 441 U.S. 677 (1979).

15

of Transportation (which interestingly administers the Maritime Administration), because it terminated him on account of his diabetes.  See id. at 189.  The Court analyzed the language of sections 504 and 505, and noted that those sections explicitly provide for a remedy to individuals discriminated against by nonfederal recipient of federal funds or providers of those funds.  See id. at 191.  Because the sections did not "unequivocally" waive the Federal Government's sovereign immunity, the former merchant marine could not sue for damages under the Act.  See id. at 192 (citations omitted).

## 2. This Court does not have jurisdiction to hear this Rehabilitation Act claim, as the regulations offer the only relief for disabled individuals claiming discrimination by federal agencies conducting their own programs

Nevertheless, those who suffer from discrimination by an Executive Agency have recourse.  Section 504(a) requires the head of each federal agency to create regulations to "carry out" the prohibition of disability discrimination.  29 U.S.C. § 794(a).  Section 505(b) provides for attorney's fees for successfully enforcing an administrative claim under section 504(a).  29 U.S.C. § 794a(b) (authorizing fee awards for prevailing party of "any action or proceeding").  Courts have interpreted the phrase "any action or proceeding" to include legal work for administrative proceedings.  See California Ass'n of Physically Handicapped, Inc. v. F.C.C., 721 F.2d 667, 671 (9th Cir. 1983) (citing New York Gaslight Club, Inc. v. Carey, 447 U.S.

54, 66 (1980)).

Per section 504 (29 U.S.C. § 794(a)), the Department of Justice (DOJ) has implemented a comprehensive regulatory scheme to process complaints of disability discrimination in the programs and activities it conducts. See 28 C.F.R. § 39.101-.170.[2] Section 39.130 mirrors and buttresses the language of 28 U.S.C. § 794, in that the DOJ prohibits discrimination of a "qualified handicapped person" in its programs and activities. Id.; see also § 39.149 (prohibition of discrimination in program accessibility); § 39.160 (prohibition of discrimination in communications).

Under the regulation, an inmate may file a complaint with DOJ's Director of Equal Employment Opportunity or BOP's EEO Officer. See § 39.170(d)(1)(i). An investigation ensues and if the parties are not able to reach an informal resolution, the BOP's EEO Officer issues a letter of findings. See § 39.170(g)(1),(h). Either party may file an appeal from the letter of findings to the Complaint Adjudication Officer (CAO) at DOJ, including a request for a hearing. See. § 39.170(h). If either party requests a hearing in its appeal, one is held before an administrative law judge and conducted in accordance with the APA. See § 39.170(k). After the administrative law judge issues a recommended decision, either party may file exceptions with DOJ's CAO. See id. The CAO then issues a final decision based on the entire record.

---

[2] The Bureau of Prisons is part of the Department of Justice.

See § 39.170(l).

As acknowledged by Mr. Yeh in his complaint, he has completed the process summarized above, including five (5) days of hearing testimony before an administrative law judge.   Compl. (Doc. No. 1) ¶ 2.   The administrative process provided him his sole course of relief, and that process actually provided him with a videophone – the same relief he seeks here without any statutory authority.

**3. Legislative history demonstrates that this Court does not have jurisdiction to hear his Rehabilitation Act claim**

This Court should also look at the legislative history of the applicable regulations.   In 1998, Congress amended the Rehabilitation Act to include a remedy for section 504 violations.   The remedy was included in section 508 (f) of the Act. Section 508(f) provides:

(1) General

(A) Complaints

Effective 6 months after the date of publication by the Access Board of final standards described in subsection (a)(2), any individual with a disability may file a complaint alleging that a Federal department or agency fails to comply with subsection (a)(1) in providing electronic and information technology.

(B) Application

This subsection shall apply only to electronic and information technology that is procured by a Federal department or agency not less than 6 months after the date of publication by the Access Board of final standards described in subsection (a)(2).

18

(2) Administrative complaints

Complaints filed under paragraph (1) shall be filed with the Federal department or agency alleged to be in noncompliance. The Federal department or agency receiving the complaint shall apply the complaint procedures established to implement section 794 of this title for resolving allegations of discrimination in a federally conducted program or activity.

(3) Civil actions

The remedies, procedures, and rights set forth in sections 794a(a)(2) and 794a(b) of this title shall be the remedies, procedures, and rights available to any individual with a disability filing a complaint under paragraph (1).

29 U.S.C. § 794d(f).

The Department Justice adopted regulations to enforce section 504 of the Rehabilitation Act, 28 U.S.C. § 794(a) because the Act did not provide for a remedy for violations of section 504.   Indeed, the Department stated:

Section 39.170 establishes a detailed complaint processing and review procedure for resolving allegations of discrimination in violation of section 504 in the Department of Justice's programs and activities. The 1978 amendments to section 504 failed to provide a specific statutory remedy for violations of section 504 in federally conducted programs. The amendment's legislative history suggesting parallelism between section 504 for federally conducted and federally assisted programs is unhelpful in this area because the fund termination mechanism used in section 504 federally assisted regulations depends on the legal relationship between a Federal funding agency and the recipients to which the Federal funding is extended.   The Department has decided that the most effective and appropriate manner in which to enforce section 504 in the federally conducted area is through an equitable complaint resolution process. Section 39.170 establishes this process.

Cooke v. BOP, 926 F. Supp. 2d at 730 (quoting Notice of Proposed Rulemaking and Supplementary Notice, 28 C.F.R. Pt. 39, Nt., at 1059).

> **4.  This Court does not have jurisdiction to hear this Rehabilitation Act claim, as numerous courts have held that the statute does not provide for a private claim for relief against federal agencies conducting their own programs**

In the absence of any explicit statutory language, courts have consistently found that there is no private right of action to enforce the Rehabilitation Act against federal agencies conducting their own programs.   See, e.g., Clark v. Skinner, 937 F.2d 123, 125-26 (4th Cir. 1991); Cousins v. Sec'y of the U.S. Dep't of Transp., 880 F.2d 603, 605-06 (1st Cir. 1989); Bell v. United States, Civ. A. No. 9:16-1225, 2017 WL 2216299, at *3 (D.S.C. May 19, 2017); Pereira v. DOJ, No. 16-cv-2599 (NRB), 2016 WL 2745850 (S.D.N.Y. May, 11, 2016); SAI v. Department of Homeland Sec., 149 F. Supp. 3d 99, 110-11 (D. D.C. 2015); Darby v. United States DOT, No. 1:14-cv-245; 2014 WL 1320143, at *2 (M.D.N.C. Mar. 28, 2014); Cooke v. BOP, 926 F. Supp. 2d 720, 731 (E.D.N.C. 2013); Brown v. VA, 451 F. Supp. 2d 273, 278 (D. Ma. 2006); Kinneary v. New York, 358 F. Supp. 2d 356, 359-60 (S.D.N.Y. 2005); Crayton v. Shalala, No. CV-94-N-1689-S, 1995 WL 605599, at *3-5 (N.D. Ala. May 3, 1995), aff'd, Crayton v. Callahan, 120 F.3d 1217 (11th Cir. 1997).[3]

---

[3] The United States Supreme Court held in Lane, 518 U.S. at 193, that section 504 does not provide for monetary relief, except for where a federal agency is acting as a

In Cousins, 880 F.2d at 604, the plaintiff brought a suit under the Rehabilitation Act and claimed that the federal Department of Transportation prevented him from obtaining a truck driving license based on a federal regulation with hearing requirements. See id. (citing 49 C.F.R. § 391.49(a) (requiring truck drivers to be able to hear "a forced whispered voice in the better ear at not less than 5 feet"). The district court dismissed the action without prejudice, and the First Circuit initially reversed the dismissal and remanded the matter back for trial. See id. The First Circuit reconsidered the matter en banc and concluded that the district court was correct in dismissing the Rehabilitation Act claim. The First Circuit noted that the Rehabilitation Act provides remedies for actions against "any recipient of Federal assistance or Federal provider of such assistance" and against the federal government as an employer, but it "does not expressly provide a remedy for one harmed by a federal agency's regulatory action." Id. at 605 (emphasis in original). Indeed, the court said that "[t]he concept of an implied private right of action serves a useful purpose elsewhere in the law, when a plaintiff seeks to enforce a federal statute against a non-federal person." Id. at 606.

In Clark (4th Cir.), 937 F.2d at 124-25, the plaintiff, a truck driver with an

---

federal provider of financial assistance; but the Court left open the question of whether it provided for injunctive relief. Importantly, the United States did not raise the injunctive issue at the Supreme Court, and thus, it was not addressed by the Court.

amputated left arm over the elbow, petitioned for a waiver from a Department of Transportation regulation requiring amputated drivers to wear prosthetic device while driving.  See id.  The Department denied his petition, and thereafter, the plaintiff filed a lawsuit against the Secretary of Transportation, claiming the prosthetic device requirement violated the Rehabilitation Act and the Fifth Amendment.  See id.  The district court found that there is no private cause of action under the Rehabilitation Act, and the Fourth Circuit affirmed.

The Fourth Circuit, citing Cousins, reasoned that section 504 does not provide a private cause of action against the federal government.  See id. (citing Cousins, 880 F.2d at 605).  The court rejected the plaintiff's claim that he could not bring his "full panoply" of claims in an administrative forum.  See id. at 126.  The court found that the administrative determination would include all section 504 issues as well as constitutional issues.  See id.

In Krumel v. City of Fremont, No. 8:01cv-259, 2002 WL 808633, at *2-3 (D. Neb. Jan. 2, 2002), a district court in the Eighth Circuit, in, found that section 504 did not allow for private causes of action against the United States Postal Service (USPS). The plaintiff who had disabilities, including blindness, claimed that the placement of mailboxes by USPS and his municipality caused him harm and the failure to move them was discriminatory.  See id., at *1.  The district court noted that the USPS had a complaint procedure set up by its own Rehabilitation Act regulations.  See id., at *4

(citing 39 C.F.R. § 255.1).   The district court found that the complaint procedures were available to the plaintiff and there was no reason that they would not be effective.  See id.  "Utilization of that procedure by complainants such as [the plaintiff] should expedite the resolution of complaints and promote judicial economy."  Id., at *5.

Mr. Yeh relies on Spence v. Straw, 54 F.3d 196, 199-200 (3d Cir. 1995), but this case is easily distinguishable, and the legal principle that Mr. Yeh attempts to argue has been soundly rejected by the Supreme Court in Lane v. Pena, 518 U.S. at 192, which was decided after Spence.

In Spence, the plaintiff applied for a position with the Department of Defense, but was ultimately rejected because he failed an eye exam.  See id. at 197.   The plaintiff sued the Department, claiming he was a "handicapped" individual as defined in the statute, and the Department failed to hire him in violation of section 504.   See id. at 198.   The Department moved to dismiss section 504 employment claim because the plaintiff failed to exhaust his administrative remedies.   See id. at 198.[4]

The Third Circuit noted that section 505 provided a remedy to those [disabled] individuals who suffered discrimination at the hands of providers and recipient of

_____

[4] The plaintiff also raised a Fifth Amendment claim that the district court dismissed because the Rehabilitation Act was the sole means to challenge disability discrimination against federal actors – a ruling the Third Circuit affirmed.   See id. at 197, 203.

federal assistance.   See id. at 199.   It also relied on Judge Posner, writing in

McGuinness v. USPS, 744 F.2d 1318, 1320 (7th Cir. 1984), that disabled individuals

can sue under both section 501 and section 504 for employment discrimination

matters.   See id.   Indeed, Judge Posner made specific mention that the Seventh

Circuit's reasoning was sound "that either an individual should not be permitted to

sue a federal agency under section 504, or alternatively that an individual asserting a

claim based upon section 504 must first exhaust Title VII remedies."   Spence, 54

F.3d at 201 (citing McGuinness, 744 F.2d at 1321-22).   This Court should note that

the Seventh Circuit has subsequently found:

> We do note, however, that we agree with Seventh Circuit precedent that
> it is doubtful that "§ 504 applies to employment discrimination suits
> against federal agencies." McWright v. Alexander, 982 F.2d 222, 225 (7th
> Cir.1992); Overton v. Reilly, 977 F.2d 1190, 1193 (7th Cir.1992);
> McGuinness v. United States Postal Serv., 744 F.2d 1318, 1321 (7th
> Cir.1984) ("[I]t is unlikely that Congress, having specifically addressed
> employment of the handicapped by federal agencies ... in section 501,
> would have done so again a few sections later in section 504.").

Johnson v. Runyon, 47 F.3d 911, 916 n.5 (7th Cir. 1995).

Nevertheless, the Third Circuit has never held what Mr. Yeh argues herein: that

the Rehabilitation Act applies to Executive agencies conducting their own programs

in a non-employment matter.

In Howard v. BOP, Civ. No. A. 3:05-cv-1372, 2008 WL 318387, at *12 (M.D.

Pa. Feb. 4, 2008), the district court found that the plaintiff did not establish that he

24

was disabled under the Rehabilitation Act, and ultimately granted summary judgment to the BOP defendants.   See id.   In finding a private cause of action under section 504, the district court did not address the above-cited cases, but instead, the district court relied on the fact that that the Supreme Court did not expressly disavow injunctive claims for relief.   See id. (citing Lane, 518 U.S. at 197).

The reasoning in Howard is respectively flawed.   First, the Howard court itself notes that section 505(a)(2) provides Congress's intent to distinguish between Executive agencies conducting their own programs and agencies providing or receiving financial assistance.   See id. (citing Lane, 518 U.S. at 197).   As the Third Circuit held in A.W. v. Jersey City Public Schs., 486 F.3d 791, 803-04 (3d Cir. 2007) (en banc): "The Rehabilitation Act adopts the scheme of 'remedies, procedures, and rights set forth in Title VI of the Civil Rights Act of 1964,' 42 U.S.C. § 2000d et seq., to remedy alleged violations of Section 504 by recipients of federal funding."   Id. (emphasis added).   Second, the Howard court does not provide any authority that Congress expressly waived the United States' sovereign immunity against awards of injunctive relief for federal agencies conducting their own programs.   See Lane, 518 U.S. at 197.

The Supreme Court has consistently held that it is "an 'elemental cannon' of statutory construction" that if a statute provides a remedy, courts do not provide additional remedies.   Karahalios v. National Fed'n of Fed. Emps., Local 1263, 589

U.S. 527, 533 (1989); <u>see also</u> <u>Alexander v. Sandoval</u>, 532 U.S. 275, 290 (2001) ("Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress.) (citations omitted); <u>accord</u> <u>Love v. Delta Airlines</u>, 310 F.3d 1347, 1360 (11th Cir. 2002) (holding district court erred in finding private cause of action in a Federal Aviation Act claim where Congress did not provide a remedy but created an elaborate administrative enforcement).

Finally, but importantly, Congress did provide a remedy for violations of section 504 for Executive agencies conducting their own programs.   That remedy is explicitly found in section 508.   29 U.S.C. § 794d(f).   Congress explicitly stated that the only way to enforce section 504 against Executive agencies conducting their own programs is to file an administrative complaint.   <u>See</u> <u>id.</u>   If a disabled complainant is successful, he or she may then seek attorneys' fees under 505(a)(2).   29 U.S.C. § 794a(a)(2).

Accordingly, Mr. Yeh does not have a right to a private cause of action under the Act, and thus sovereign immunity bars his suit.

**5.  The only recourse Mr. Yeh has is to challenge the BOP's administrative finding through the APA, but because his complaint fails to challenge that ruling, this Court cannot infer he meant to bring an ADA complaint.**

One of the additional reasons why courts have found that there is no private cause of action under section 504 of the Rehabilitation Act is because the proper avenue to contest administrative decisions is through the Administrative Procedures Act (the "APA"), 5 U.S.C. §§ 701-706.   The APA provides that when an agency acts wrongly against an individual or its actions adversely affect or aggrieve that individual, the individual is entitled to judicial review on two conditions:   1) a statute makes that agency action reviewable and 2) there is no other adequate remedy at law.   Id. §§ 702, 704.   Judicial review is not available if the agency action is reserved to the agency discretion by law.   See Pudin v. Office of (Not of) Civ. Rights of the U.S. Dep't of Educ., 186 F. Supp. 3d 288, 293 (S.D.N.Y 2016) (quoting Marlow v. United States Dep't of Educ., 820 F.2d 581, 582 (2d Cir. 1987)).

In Sai, the D.C. district court noted that although Congress wanted to create a right to be free of disability discrimination in federal programs and activities, there is no evidence Congress created a private cause of action under the Rehabilitation Act. 149 F. Supp. 3d at 113.   The court presumed that Congress "knew that review would be available under the APA [because t]he APA 'embodies the basic presumption of judicial review to one suffering legal wrong because of agency action.'" Id. at 113-14

27

(quoting <u>Abbott Labs. v. Gardner</u>, 387 U.S. 136, 140 (1967) (internal quotations omitted in original) (quoting 5 U.S.C. § 702)).

The <u>Sai</u> court, like many other courts noted above, cite to the First Circuit's development of law in this area.    <u>Id.</u> (citing <u>Cousins</u>, 880 F.2d at 6).    In <u>Cousins</u>, the First Court has noted that the Rehabilitation Act is silent as to a private right of action because the APA provides adequate relief, as it offers judicial review of agency decisions.    880 F.2d at 6.    This ensures a "'a single uniform method for review of agency action.'" <u>Id.</u>

Here, Mr. Yeh has the option to refile this action under the APA and seek judicial review of the administrative record.    Importantly, under the APA, this Court must review the record before the agency in making its decision.    See <u>Camp v. Pitts</u>, 411 U.S. 138, 142 (1973); <u>Citizens to Preserve Overton Park v. Volpe</u>, 401 U.S. 402, 420 (1971).    Under the APA, this Court would not order further discovery or have hearings that would include evidence outside of the administrative record.    See <u>id.</u> As noted below, if Mr. Yeh pursues an APA action, he would have to have a live case or controversy.    He has none.    Nevertheless, this Court should dismiss this matter for lack of jurisdiction without prejudice to the extent Yeh wants to pursue an APA action.

Any argument that this Court should just interpret the complaint as one brought under the APA is without moment.    While the complaint summarily

references that the parties have engaged in this extensive process, Mr. Yeh is not seeking review of the DOJ's final decision.   The complaint contains no reference to the APA and does not seek to compel agency action that has been unlawfully withheld or unreasonably delayed, nor does it seek to set aside agency action.   In fact, the DOJ's final decision was actually favorable to Mr. Yeh in that it provided the requested relief by directing the BOP to provide a videophone for Mr. Yeh's use.

Mr. Yeh's sole count in the complaint is framed as "discrimination on the basis of a disability in violation of the Rehabilitation Act" and recites the application of the Rehabilitation Act to the BOP and Yeh's request for a videophone.   See Compl. (Doc. No. 1) at 9-10.   His requested relief is also in the nature of a private right of action.   Thus, like the above referenced actions, this Court should dismiss the Complaint.   See, e.g., Clark, 937 F.2d at 127, Cousins, 880 F.2d at 611; Marlow, 820 F.2d at 584; Salvador, 800 F.2d at 100.

## B. Mr. Yeh's Claim Does Not Provide A Live Case Or Controversy And Thus This Court Has No Authority To Review It Under Article III Of The Constitution

Alternatively, even if Mr. Yeh had a viable Rehabilitation Act (or APA) claim, there is no case or controversy because the relief he seeks is currently being provided to him.

Here, the dispute is moot and there is no case or controversy for this Court to rule upon.   As this Court noted in its adoption of the Report and Recommendation

29

of December 12, 2018, the Department of Justice Complaint Adjudication Officer (CAO) ordered a videophone but noted that the installation may take some time. Doc. No. 57 at 5.   Mr. Yeh's request for <u>immediate</u> installation of a videophone went beyond the CAO's administrative order, an impossibility as thoroughly laid out by this Court in its Report.   <u>See</u> <u>id.</u>   Nevertheless, the relief, whether this Court had jurisdiction to order or not, has been attained.   <u>See</u> <u>id.</u>

Yet, Mr. Yeh now seeks an abstract Order that he be provided with a videophone in every federal institution he is housed, including half-way houses, as long as he remains in federal custody.   <u>See</u> <u>Valley Forge Christian College</u>, 454 U.S. at 475 (citations omitted) (noting plaintiff must show injury-in-fact).   Mr. Yeh did not make these factual allegations in his Complaint.   Indeed, as noted above, Mr. Yeh specifically complains about his conditions of confinement at FCI Schuylkill and argues that the accommodation he is provided by FCI Schuylkill is insufficient.   <u>See</u> <u>generally</u> Compl.   Similarly, Mr. Yeh complained in his administrative action that FCI Schuylkill officials discriminated against him – not the entire BOP.   <u>See</u> Final Admin. Order (02/05/2018).

Under 28 C.F.R. § 39.160(a)(1), an executive agency must

furnish appropriate auxiliary aids where necessary to afford a handicapped person an equal opportunity to participate in, and enjoy the benefits of, a program or activity conducted by the agency

<u>Id.</u>   Thus, the agency, here the Department of Justice, must make an independent

30

analysis of whether the auxiliary aid provided to the disabled individual is appropriate. In Mr. Yeh's case, the CAO determined that, at FCI Schuylkill, the TTY machine was not appropriate based on where it was located, the requirements of how the call was to be made, the length of time it took to make a call, etc.   See CAO Order (Doc. No. 24-2) at 11.

> In addition, under subsection 39.160(d):
>
> This section does not require the agency to take any action that it can demonstrate would result in a <u>fundamental</u> <u>alteration</u> in the nature of a program or activity or in undue financial and administrative burdens.   In those circumstances where agency personnel believe that the proposed action would fundamentally alter the program or activity or would result in undue financial and administrative burdens, the agency has the burden of proving that compliance with § 39.160 would result in such alteration or burdens.

<u>Id.</u> (emphasis added).

Thus, the Department must make a determination whether there is a proposed accommodation at another institution or halfway house that would be "appropriate."   Next, the Department must make an independent decision as to whether installation of a videophone at a prison, half-way house, or other place of confinement that would fundamentally alter the nature of the program. Can a videophone be installed in a halfway house or is there an alternative that would be more appropriate.   Would a videophone fundamentally alter the

31

halfway house program.   These independent determinations must be

independently exhausted.   Mr. Yeh cannot assert a speculative claim that he

will not receive an appropriate accommodation and ask this Court to retain

jurisdiction.   He had no standing to begin this case, and even if he did, he has

none now.

Finally, the Prison Litigation Reform Act also limits the power of courts to

impose an injunction.   See id. (citing 18 U.S.C. § 3626(a)(1)(A)).   Subsection

3626(a)(1)(A) provides:

> Prospective relief in any civil action with respect to prison conditions
> shall extend no further than necessary to correct the violation of the
> Federal right of a particular plaintiff or plaintiffs. The court shall not
> grant or approve any prospective relief unless the court finds that such
> relief is narrowly drawn, extends no further than necessary to correct the
> violation of the Federal right, and is the least intrusive means necessary
> to correct the violation of the Federal right. The court shall give
> substantial weight to any adverse impact on public safety or the
> operation of a criminal justice system caused by the relief.

Id.

Here, Mr. Yeh seeks a far reaching injunction that goes beyond the

factual allegations in his complaint regarding FCI Schuylkill.   The new relief

requested is not narrowly drawn, is very intrusive, and there is adverse impact

on public safety because the BOP would not be given an opportunity to

demonstrate fundamental alteration to its program.   This Court should thus

deny this further request for relief from a complaint that is moot.

32

**C. <u>Mr. Yeh Has Not Named The Proper Defendant</u>**

Presuming for purposes of argument that Mr. Yeh has raised a proper claim under the Rehabilitation Act, he has improperly named United States Bureau of Prisons (BOP), the Acting Director of the BOP, the NE Regional Director, and the Warden of FCI Schuylkill, as defendants.   Only the head of an agency can be named as a defendant on a Rehabilitation Act claim.   <u>See</u>, <u>e.g.</u>, <u>Smith v. DOD DLA DDSP</u>, 1:CV-09-0413, 2010 WL 1390854, at *7 (M.D. Pa. Mar. 30, 2010).   The proper party is the Attorney General of the United States, head of the Department of Justice.   As such this Court should grant judgment on the pleadings to these improperly named defendants.   <u>See</u> <u>id.</u>

## VI.    Conclusion

For the reasons stated above, this Court should grant Defendants' motion for judgment on the pleadings.

Respectfully submitted,

DAVID J. FREED
United States Attorney


s/Michael J. Butler
Michael J. Butler
Assistant United States Attorney
228 Walnut Street
PO Box 11754
Harrisburg, PA   17108-1754
Tel: (717)221-4482
Fax: (717)221-4493
Michael.J.Butler@usdoj.gov

Date:   February 19, 2019

## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOHN TC YEH,** | : | **NO. 3:18-CV-00943** |
| **Plaintiff,** | : | |
| | : | **(Munley, J.)** |
| **v.** | : | **(Carlson, M.J.)** |
| | : | |
| **UNITED STATES BUREAU OF** | : | |
| **PRISONS; MARK S. INCH,** | : | |
| **Director of the BOP; MICHAEL** | : | |
| **CARVAJAL, Regional Director of** | : | |
| **The BOP, Northeast Region;** | : | |
| **J.E. KRUEGER, Warden of** | : | |
| **FCI Schuylkill,** | : | |
| **Defendants.** | : | **Filed Electronically** |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.   That on February 19, 2019, he served a copy of the attached

## BRIEF IN SUPPORT OF MOTION
## FOR JUDGMENT ON THE PLEADINGS

by ECF

ADDRESSEE:

Mary C. Vargas, Esquire
Stein & Vargas, LLP
840 First Street, NE, Third Floor
Washington, D.C. 20002

Anna P. Bitencourt, Esquire
National Association of the Deaf Law & Advocacy Center
8630 Fenton Street
Suite 820
Silver Spring, MD 20910

/s Michael J. Butler
Michael J. Butler