## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOHN TC YEH,** | : | **Civil No. 3:18-CV-943** |
| | : | |
| **Plaintiff,** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **UNITED STATES** | : | |
| **BUREAU OF PRISONS, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

### I.    Introduction

The instant case involves a claim under the Rehabilitation Act ("RA"), 29 U.S.C § 794, brought by a deaf federal inmate, John Yeh. Yeh, who has been profoundly deaf since birth, sought administrative relief from the United States Bureau of Prisons ("BOP") due to the inadequate technology at the Federal Correctional Institution at Schuylkill ("FCI Schuylkill"), which denied Yeh an equal opportunity to communicate with his family members, counsel, and other individuals outside of the correctional facility. Several months after receiving administrative relief in the form of an order to install videophone technology at Schuylkill, Yeh brought this action against the BOP, which sought injunctive relief and alleged that the continuing failure to install appropriate videophone technology violated section

504 of the RA. Ultimately, a videophone was installed at FCI Schuylkill in November of 2018.

The defendants now move for judgment on the pleadings. (Doc. 59.) In this motion, the defendants raise twofold claims. First, they present a defense based upon their statutory interpretation of the Rehabilitation Act, arguing that this court does not have jurisdiction over Yeh's RA claim. As discussed below, we recommend that this court follow the path chosen by other courts and decline to adopt this narrow statutory interpretation of the remedial scope of the RA.

In the alternative the defendants assert that, in any event, the matter is now moot considering that a videophone was, in fact, installed at the institution. This argument has greater force, particularly in light of the recent report that Yeh was released from FCI Schuylkill, placed in a halfway house, and placed on home detention for the remainder of his custodial sentence. (Doc. 77.) While we recognize that events may soon render this dispute entirely moot, at present we believe that this case may still present a live dispute which is cognizable in federal court. Therefore, acting out of an abundance of caution we recommend that the district court defer acting upon this aspect of the defendants motion for judgment on the pleadings until Yeh's custodial sentence fully expires.

## II.    <u>Statement and Facts of the Case</u>

John Yeh has been an inmate in the BOP since 2012, following his conviction on federal fraud offenses. He is currently serving a 108-month sentence, and his projected release date is in October 2019. Since the beginning of his incarceration, Yeh has been housed at FCI Schuylkill, a facility that provides text-telephone services ("TTY") for deaf or hearing-impaired inmates. In 2015, Yeh requested access to a videophone, a form of technology that enables a person whose primary language is American Sign Language ("ASL") to communicate more efficiently with others. This request was denied based on the availability of the TTY services.

In September 2015, Yeh filed a complaint with the Equal Employment Opportunity ("EEO") to the Department of Justice Civil Rights Division, alleging that FCI Schuylkill violated the RA when it denied his request for a videophone. The EEO denied Yeh's request on March 24, 2016, reasoning that the TTY was adequate to accommodate Yeh's needs. He appealed this decision pursuant to 28 C.F.R. § 170(i) and requested a hearing, after which an Administrative Law Judge ("ALJ") sustained the finding that the TTY was an appropriate accommodation. Yeh then filed a Letter of Exceptions to the ALJ's decision with the Department of Justice Complaint Adjudication Officer ("CAO") on April 24, 2017.

On February 5, 2018, the CAO issued a decision, which found that the TTY did not provide Yeh with equal opportunity for communication at FCI Schuylkill,

3

and that the BOP had not provided any evidence that the installation of a videophone would pose undue administrative or financial hardships. The CAO noted the BOP's legitimate security concerns, but ultimately found that a videophone would provide Yeh with significantly greater communication opportunities than the TTY. In so finding, the CAO cautioned Yeh that the installation of the videophone would take time and patience.

Three months after this decision, Yeh filed his complaint with this court, alleging a violation of section 504 of the RA, 29 U.S.C § 794, based on the BOP's continuing failure to install the videophone in accordance with the CAO's decision. (Doc. 1). Along with this complaint, Yeh filed a motion for a preliminary injunction, which sought an order directing the defendants to immediately install a videophone at Schuylkill. (Doc. 2). We then entered a series of orders to permit an expedited development of the factual record and held a hearing on the motion for preliminary injunction on August 10, 2018. (Docs. 15, 20, 28, 29). The hearing revealed that there were many steps involved in the installation process, including but not limited to infrastructure installation, internet service acquisition from private vendors, and ensuring adequate institutional security. Further, several of these steps involved outside third-party contractors who were not arties to this litigation. Therefore, we held the motion under advisement and simultaneously instituted a rigorous program of reporting and case management, which was designed to ensure that the relief

requested by Yeh—the installation of a videophone—would be accomplished in a timely fashion. Ultimately, on December 4, 2018, it was reported that the videophone had been installed at Schuylkill and that Yeh had made 44 calls totaling 182 minutes. (Doc. 54). Thus, Yeh has received the principal relief which he sought in this litigation. Moreover, it is now reported that Yeh was released from FCI Schuylkill, placed in a halfway house, and placed on home detention for the remainder of his custodial sentence, changed circumstances which further reduce the likelihood that he will need custodial access to these communications technologies. (Doc. 77.)

Given this significant development, on December 12, 2018, we issued a Report and Recommendation recommending that the motion for preliminary injunction be denied. (Doc. 57). In short, we recognized that, because the videophone had been installed at Schuylkill, "no further action [was] needed at this time to achieve the preliminary relief sought by Yeh." (Id., at 13). Moreover, we noted that granting the injunctive relief that Yeh sought would have been problematic, as much of the installation process relied heavily on private persons that were not parties to this litigation. (Id.) Thus, we recommended that the motion be denied without prejudice to renewal if the videophone access at Schuylkill was improperly terminated or curtailed. (Id., at 14). The District Court adopted our

Report and Recommendation and denied the motion without prejudice on January 4, 2019. (Doc. 58).

Subsequently, the defendants filed the instant motion for judgment on the pleadings. (Doc. 59). The motion argues that the RA does not provide for a cause of action against a federal agency that conducts its own programs, that Yeh has sued the wrong defendants, and that, even if Yeh had a cause of action, the complaint is moot because Yeh has received the relief he requested. (Doc. 63, at 1). For his part, Yeh contends that the RA does, in fact, provide him with a cause of action against the BOP, and that the matter is not moot, as the defendants have not guaranteed that he will have access to the videophone for the remainder of his incarceration. (Doc. 69, at 8-9). Thus, the motion is fully briefed and ripe for resolution. (Docs. 63, 69, 71, 76).

## III.  Discussion

### A.  Motion for Judgment on the Pleadings – The Legal Standard

The defendants have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). A party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). In ruling on a motion for judgment on the pleadings, courts are to consider the pleadings and exhibits thereto, matters of public record and "undisputedly authentic documents attached to the motion for judgment on the pleadings if

6

plaintiffs' claims are based on the documents." <u>Atiyeh v. Nat'l Fire Ins. Co. of Hartford</u>, 742 F. Supp. 2d 591, 595 (E.D. Pa. 2010). Motions filed pursuant to Rule 12(c) are reviewed under the same standard that applies to a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6). <u>See</u> <u>Turbe v. Gov't of V.I.</u>, 938 F.2d 427, 428 (3d Cir. 1991); <u>United States v. Cephalon, Inc.</u>, 159 F. Supp. 3d 550, 555 (E.D. Pa. 2016).

Rule 12(b)(6) of the Federal Rules of Civil Procedure mandates dismissal of a complaint for a "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007) continuing with our opinion in <u>Phillips [v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u> –U.S.–, 129 S. Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the Court must accept as true all allegations in the complaint and all

reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice." Id. at 678. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

Two years after Fowler, the Third Circuit further observed:

9

> The Supreme Court in <u>Twombly</u> set forth the "plausibility" standard for
> overcoming a motion to dismiss and refined this approach in <u>Iqbal</u>. The
> plausibility standard requires the complaint to allege "enough facts to
> state a claim to relief that is plausible on its face." <u>Twombly</u>, 550 U.S.
> at 570, 127 S. Ct. 1955. A complaint satisfies the plausibility standard
> when the factual pleadings "allow[ ] the court to draw the reasonable
> inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>,
> 129 S. Ct. at 1949 (citing <u>Twombly</u>, 550 U.S. at 556, 127 S. Ct. (1955)).
> This standard requires showing "more than a sheer possibility that a
> defendant has acted unlawfully." <u>Id.</u> A complaint which pleads facts
> "merely consistent with" a defendant's liability, [ ] "stops short of the
> line between possibility and plausibility of 'entitlement of relief.'"

<u>Burch v. Milberg Factors, Inc.</u>, 662 F.3d 212, 220-21 (3d Cir. 2011).

In practice, consideration of the legal sufficiency of a complaint entails a

three-step analysis:

> First, the court must "tak[e] note of the elements a plaintiff must plead
> to state a claim." <u>Iqbal</u>, 129 S. Ct. at 1947. Second, the court should
> identify allegations that, "because they are no more than conclusions,
> are not entitled to the assumption of truth." <u>Id.</u> at 1950. Finally, "where
> there are well-pleaded factual allegations, a court should assume their
> veracity and then determine whether they plausibly give rise to an
> entitlement for relief." <u>Id.</u>

<u>Santiago v. Warminster Tp.</u>, 629 F.3d 121, 130 (3d Cir. 2010).

## B. **The Defendants' Motion Should Be Denied, in Part, and Deferred, in Part.**

The defendants have raised three arguments in their instant motion for

judgment on the pleadings. First, they contend that the RA does not provide for a

private cause of action against an agency that conducts its own programs. They also

argue that Yeh has named the wrong defendants and assert that the only proper defendant is the Attorney General of the United States. Finally, they argue that, even if Yeh has a claim under the RA, the claim is moot because Yeh has already received the relief he seeks—the installation of a videophone at FCI Schuylkill. However, because we conclude that the RA does provide a cause of action against the BOP and named individuals, and that the complaint is not yet entirely moot, we will recommend that the motion be denied, in part, and deferred, in part.

> **(1)** **The Rehabilitation Act Provides for a Cause of Action Against the BOP, and the BOP and Individual Defendants are Properly-Named Defendants.**

The defendants argue that Yeh does not have a private cause of action against them under the Rehabilitation Act ("RA"). In short, they contend that sovereign immunity bars Yeh's claim, and that, in any case, the RA does not provide for a cause of action against an agency that conducts its own programs, such as the BOP.

We do not write on a blank slate when considering this issue. Quite the contrary, many courts have considered the question of the proper reach of the RA. Bound by this prior precedent, we are constrained to disagree with the defendants' position.

Section 504(a) of the RA provides:

No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the

benefits of, or be subjected to discrimination . . . *under any program or activity conducted by any Executive agency.*

29 U.S.C. § 794(a) (emphasis added). This provision "requires that qualified disabled individuals be 'provided with meaningful access to the benefit' in question." Collins v. Pigos, 2013 WL 943119, at *6 (M.D. Pa. March 11, 2013) (quoting Alexander v. Choate, 469 U.S. 287, 301 (1985)). To prevail on a claim under this provision, a plaintiff must show that (1) he had a disability within the meaning of the Act, (2) he is qualified for the benefit of the program, and (3) he was excluded because of his disability. Howard v. Bureau of Prisons, 2008 WL 318387, at *10 (M.D. Pa. Feb. 4, 2008); see also Donahue v. Consolidated Rail Corp., 224 F.3d 226, 229 (3d Cir. 2000) ("The elements of a claim under § 504(a) of the Rehabilitation Act are very similar to the elements of a claim under Title I of the [ADA]").

While the Supreme Court of the United States has held that sovereign immunity bars claims for money damages under this provision, Lane v. Pena, 518 U.S. 187 (1996), it has not addressed whether claims for injunctive relief are similarly prohibited. However, the Court of Appeals and courts in this district have held that a plaintiff may bring a claim for injunctive relief under section 504(a) of the RA against agencies and individuals acting in their official capacities. See Spence v. Straw, 54 F.3d 196, 199 (3d Cir. 1995) ("Federal agencies may, by the terms of the Rehabilitation Act, be sued for a violation of either section 501 or 504

of the Act"); Njos v. Bureau of Prisons, 2015 WL 10376135, at *4 (denying summary judgment and permitting a Rehabilitation Act claim against the Bureau of Prisons), report and recommendation adopted, 2015 WL 5785832 (M.D. Pa. Sept. 28, 2015); Collins, 2013 WL 943119, at *6 (permitting plaintiff to bring an RA claim against BOP officials by way of an amended complaint); Howard, 2008 WL 318387, at *9 (permitting a section 504(a) claim against the BOP).[1]

On this score, we find the defendants' argument to the contrary unavailing. While the defendants point us to a myriad of caselaw from other circuits and district courts, it is clear that district courts in this circuit, as well as the Court of Appeals, have permitted claims under the RA against the BOP and individuals acting in their official capacities. We are bound by this Third Circuit precedent and in our view under this precedent, the defendants' jurisdictional argument fails. Accordingly, the plaintiff should be permitted as a matter of law to proceed with his claim for injunctive relief against the defendants under the RA.

---

[1] While the defendants point to one case in this district for the proposition that only the head of the agency can be sued under the RA, (Doc. 63, at 33), in our view, this contrary authority from the Third Circuit and other Middle District courts suggests otherwise, and we recommend that this claim be permitted to move forward against the named defendants—the BOP and several individuals in their official capacities only.

(2) **The Complaint is Not Moot because the Defendants Have Failed to Ensure Videophone Access for Yeh for the Remainder of His Incarceration.**

Finally, the defendants assert that, even if Yeh has a cause of action under the RA, his claim is now moot because he has received the relief he requested—a videophone has been installed at FCI Schuylkill. We regard this as a very close question particularly in light of the recent report that Yeh was released from FCI Schuylkill, placed in a halfway house, and placed on home detention for the remainder of his custodial sentence. (Doc. 77.) We also agree that the BOP has acted with dispatch and provided substantial relief to Yeh during his final months of incarceration. Finally, we acknowledged that with Yeh's projected release from all aspects of his custodial sentence in October 2019, this dispute will become entirely moot. However, given the uncertainty surrounding continuing Yeh's access to this technology for the remainder of his incarceration, we recommend that the court defer ruling on this claim until Yeh's fully completes all aspects of his custodial sentence.

"Mootness asks whether changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief." Ehrheart v. Verizon Wireless, 609 F.3d 590, 596 (3d Cir. 2010) (internal quotation marks omitted). "If developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from

being able to grant the requested relief, the case must be dismissed as moot." Id. At

the same time, under the "capable of repetition" exception to the mootness doctrine,

> A court may exercise its jurisdiction and consider the merits of a case
> that would otherwise be deemed moot when "(1) the challenged action
> is, in its duration, too short to be fully litigated prior to cessation or
> expiration, and (2) there is a reasonable expectation that the same
> complaining party will be subject to the same action again."

Rendell v. Rumsfeld, 484 F.3d 236, 241 (3d Cir. 2007) (quoting Spencer v. Kemna,

523 U.S. 1, 17 (1998)). This exception is, however, "narrow and available 'only in

exceptional situations.'" Id. (quoting City of Los Angeles v. Lyons, 461 U.S. 95,

109 (1983)). However, "'a court will not dismiss a case as moot,' even if the nature

of the injury changes during the lawsuit, if 'secondary or "collateral" injuries survive

after resolution of the primary injury.'" Freedom of Religion Foundation, Inc. v.

New Kensington Arnold Sch. Dist., 832 F.3d 469, 476 (3d Cir. 2016) (quoting

Chong v. Dist. Dir., I.N.S., 264 F.3d 378, 384 (3d Cir. 2001)); see also Cantrell v.

City of Long Beach, 241 F.3d 674, 678 (9th Cir. 2001) ("[T]he question is not

whether the precise relief sought at the time the application for an injunction was

filed is still available. The question is whether there can be any effective relief.").

In this case, it is undisputed that Yeh has received the relief that he originally

requested—a videophone has been installed at FCI Schuylkill and Yeh has had

access to it in order to make calls to his family members and counsel. However, as

the plaintiff adamantly points out, the defendants have not been able to guarantee

15

that Yeh will have access to the videophone for the remainder of his incarceration, which is a period of some six more months. This concern is greatly reduced now that Yeh has been released to home detention, but it remains possible that Yeh's conditions of confinement during the remaining few months of his sentence may be subject to change. Accordingly, we cannot recommend dismissal of Yeh's claim on the grounds of mootness, as any action to improperly curtail or terminate Yeh's access to the videophone technology could constitute a "second or collateral injury," even though the primary injury has been remedied. Freedom of Religion Foundation, Inc., 832 F.3d at 476. Thus, while the exception to the mootness doctrine is narrow, in our view, the instant case presents a situation in which Yeh's injury is potentially capable of repetition, and the six-month period of his remaining incarceration would be too short a time to fully litigate any further issues that arise.

In sum, while Yeh has received the primary injunctive relief that his complaint seeks, the circumstances of the instant case make it possible that this relief could be curtailed or terminated in the remaining months of Yeh's sentence. Accordingly, we recommend that the defendants' motion for judgment on the pleadings on the grounds of mootness be deferred pending completion of all aspects of this custodial sentence. However, anticipating that Yeh's current home detention status likely eliminates any active, current controversy in this matter, it is further recommended

16

that the parties stay any further merits discovery pending completion of the custodial component of Yeh's sentence.

## IV.    <u>Recommendation</u>

Accordingly, for the foregoing reasons, IT IS RECOMMENDED THAT the defendants' motion for judgment on the pleadings (Doc. 59) be DENIED, in part, to the extent that it asserts that the court lacks jurisdiction to entertain this case under the RA, and DEFERRED, in part, to the extent that the defendants argue this case is moot, pending completion of all aspects of this custodial sentence.  Finally, IT IS FURTHER RECOMMENDED that the parties stay any further merits discovery pending completion of the custodial component of Yeh's sentence.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or

where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 15th day of May 2019.


_/S/ Martin C. Carlson_
Martin C. Carlson
United States Magistrate Judge