# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN TC YEH, | : | Civil No. 3:18-CV-943 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| UNITED STATES | : | |
| BUREAU OF PRISONS, et al., | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

## I.    Introduction

We now write the final chapter in a legal saga which has spanned many years, and entailed extensive administrative proceedings as well as federal district court litigation. The instant case, which comes before us for consideration of the plaintiff's attorneys' fees petition, involved a claim under the Rehabilitation Act ("RA"), 29 U.S.C. § 794, brought by a deaf federal inmate, John Yeh. Yeh, who has been profoundly deaf since birth, sought administrative relief from the United States Bureau of Prisons ("BOP") due to the inadequate technology at the Federal Correctional Institution at Schuylkill ("FCI Schuylkill"), which denied Yeh an equal opportunity to communicate with his family members, counsel, and other individuals outside of the correctional facility. Several months after receiving administrative

relief in the form of an order to install videophone technology at FCI Schuylkill, Yeh brought this action against the BOP, which sought injunctive relief and alleged that the continuing failure to install appropriate videophone technology violated section 504 of the RA. Ultimately, a videophone was installed at FCI Schuylkill in November of 2018.

Yeh was subsequently released from custody. As a result of this development, the district court, Munley J., dismissed this case as moot, thus resolving the merits litigation in this case. What remains, then, is the plaintiff's petition for attorneys' fees. (Doc. 84). The parties have consented to magistrate judge jurisdiction for the resolution of this fees petition. (Doc. 94). This motion is fully briefed and is, therefore, ripe for resolution. For the reasons set forth below, this motion, (Doc. 84), will be GRANTED in part as follows: Plaintiff's counsel are entitled to a fees award for the work they performed in the administrative proceedings in this case, along with their work in preparing the complaint which allowed the court to consider their administrative proceedings fees, as well as the time spent litigating this fees petition. The plaintiff's counsel's petition for attorneys' fees for district court preliminary injunction and merits litigation, however, will be disallowed.

## II.    <u>Statement of Facts and of the Case</u>

John Yeh has been an inmate in the BOP since 2012, following his conviction on federal fraud offenses. Yeh was sentenced to 108-months imprisonment. He

remained in federal custody until April 18, 2019, when Yeh was placed in a halfway house and later was moved to home detention.

From the outset of his incarceration, Yeh was housed at FCI Schuylkill, a facility that provided text-telephone services ("TTY") for deaf or hearing-impaired inmates. Nearly five years ago, in 2015, Yeh requested access to a videophone, a form of technology that enables a person whose primary language is American Sign Language ("ASL") to communicate more efficiently with others. This request was denied based on the availability of the TTY services.

In September 2015, Yeh filed a complaint with the Equal Employment Opportunity ("EEO") to the Department of Justice Civil Rights Division, alleging that FCI Schuylkill violated the RA when it denied his request for a videophone. The EEO denied Yeh's request on March 24, 2016, reasoning that the TTY was adequate to accommodate Yeh's needs. He appealed this decision pursuant to 28 C.F.R. § 170(i) and requested a hearing, after which an Administrative Law Judge ("ALJ") sustained the finding that the TTY was an appropriate accommodation. Yeh then filed a Letter of Exceptions to the ALJ's decision with the Department of Justice Complaint Adjudication Officer ("CAO") on April 24, 2017.

On February 5, 2018, the CAO issued a decision, which found that the TTY did not provide Yeh with equal opportunity for communication at FCI Schuylkill, and that the BOP had not provided any evidence that the installation of a videophone

would pose undue administrative or financial hardships. The CAO noted the BOP's legitimate security concerns, but ultimately found that a videophone would provide Yeh with significantly greater communication opportunities than the TTY. In so finding, the CAO expressly cautioned Yeh that the installation of the videophone would take time and patience.

Three months after this decision, Yeh filed his complaint with this court, alleging a violation of section 504 of the RA, 29 U.S.C. § 794, based on the BOP's continuing failure to install the videophone in accordance with the CAO's decision. (Doc. 1). Along with this complaint, Yeh filed a motion for a preliminary injunction, which sought an order directing the defendants to immediately install a videophone at Schuylkill. (Doc. 2). We then entered a series of orders to permit an expedited development of the factual record and held a hearing on the motion for preliminary injunction on August 10, 2018. (Docs. 15, 20, 28, 29). The hearing revealed that there were many steps involved in the installation process, including but not limited to infrastructure installation, internet service acquisition from private vendors, and ensuring adequate institutional security. Further, several of these steps involved outside third-party contractors who were not parties to this litigation. Therefore, we held the motion under advisement and simultaneously instituted a program of reporting and case management, reporting on the Bureau of Prisons' progress in ensuring that the relief which the Department of Justice had administratively

determined was appropriate for Yeh—the installation of a videophone—was accomplished in a timely fashion. By December 4, 2018, the Bureau of Prisons reported that the videophone had been installed at Schuylkill and that Yeh had made 44 calls totaling 182 minutes. (Doc. 54). Thus, by late 2018, some three years after he began pursuing this administrative claim under the RA, Yeh received the principal relief which he sought in these administrative proceedings.

Given this significant development, on December 12, 2018, we issued a Report and Recommendation recommending that the motion for preliminary injunction be denied. (Doc. 57). In short, we recognized that, because the videophone had been installed at Schuylkill, "no further action [was] needed at this time to achieve the preliminary relief sought by Yeh." (Id., at 13). Moreover, we noted that granting the injunctive relief that Yeh sought would have been problematic, as much of the installation process relied heavily on private persons that were not parties to this litigation. (Id.) Thus, we recommended that the motion be denied without prejudice to renewal if the videophone access at Schuylkill was improperly terminated or curtailed. (Id., at 14). The District Court adopted our Report and Recommendation and denied the motion without prejudice on January 4, 2019. (Doc. 58).

Subsequently, the defendants filed a motion for judgment on the pleadings, (Doc. 59), which argued, *inter alia*, that the complaint was moot because Yeh had

received the relief he requested and was later released from custody. (Doc. 63, at 1). On August 6, 2019, the district court found that this lawsuit was now moot given Yeh's release from custody, resolving this merits litigation. (Docs. 81-83).

The plaintiff then filed the instant petition for attorneys' fees.

## III. Discussion

### A. Legal Fees Litigation—Guiding Principles

Our consideration of this fees petition is guided by certain settled legal principles. At the outset, like many federal civil rights statutes, the Rehabilitation Act ("RA"), 29 U.S.C. § 794, has a fee shifting provision which allows a prevailing party in litigation to collect attorneys' fees for having vindicated the statutory rights of the disabled. Specifically, 29 U.S.C. § 794a(b) provides that in "any action or proceeding to enforce or charge a violation of a provision [the RA]," the court "may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." Therefore, the threshold question that must be addressed when considering any fees petition is the issue of whether the petitioning plaintiff is a prevailing party.

In some instances, as in this case, a plaintiff has engaged in extensive administrative agency litigation in order to vindicate some statutory disability rights. After prevailing before the administrative agency, the plaintiff may then seek to enforce that administrative agency decision in federal court and seek attorney's fees

as a prevailing party in the administrative agency proceedings. Because 29 U.S.C. § 794a(b) provides for fees award in "any *action* or *proceeding* to enforce or charge a violation of a provision [the RA]," courts have construed the RA as providing fee recoveries both to prevailing parties in legal actions, and for those parties who prevail in agency proceedings. See <u>M.G. v. E. Reg'l High Sch. Dist.</u>, 386 F. App'x 186, 187 (3d Cir. 2010). We construe the plaintiff's complaint as seeking such fees, both for the agency proceedings and for the work done in the district court. Accordingly, we will separately assess Yeh's entitlement to fees for both the agency proceedings and the federal court litigation.

When determining whether a plaintiff is a prevailing party before the district court, it is not enough to say that the plaintiff's lawsuit was simply a "catalyst" which inspired timely action by the defendants. <u>Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.</u>, 532 U.S. 598, 609, 121 S. Ct. 1835, 1843, 149 L. Ed. 2d 855 (2001). More is needed to attain prevailing party status in federal court. Thus, we are instructed to apply a two-part test in determining whether a party has prevailed in federal court in a way that creates an entitlement to attorneys' fees. First, we are called upon to evaluate the degree of success that the party enjoyed in the district court litigation. On this score, it has been aptly noted that: "The Supreme Court has given a 'generous formulation' to the term 'prevailing party,' stating that 'plaintiffs may be considered prevailing parties for attorney's fees purposes if they

succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.' " <u>Young v. Smith</u>, 269 F. Supp. 3d 251, 265 (M.D. Pa. 2017), <u>aff'd</u>, 905 F.3d 229 (3d Cir. 2018). Thus complete and absolute success in all facets of litigation is not necessary for a litigant to be deemed a prevailing party entitled to a fees award. Instead, as the court of appeals has observed:

> The Supreme Court has given "generous formulation" to the term "prevailing party" to reduce the financial burden on those seeking to vindicate important public interests that might otherwise be without an advocate. Therefore, "plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." In <u>Texas State Teachers Association v. Garland Independent School District</u>, the Supreme Court defined this standard as follows: "[T]o be considered a prevailing party . . . the plaintiff must be able to point to a resolution of the dispute which *changes the legal relationship* between itself and the defendant. . . . The touchstone of the prevailing party inquiry must be the *material alteration of the legal relationship of the parties*. . . ."

<u>Ward v. Philadelphia Parking Auth.</u>, 634 F. App'x 901, 903 (3d Cir. 2015) (footnotes omitted) (emphasis in original).

There is, however, a second aspect to this prevailing party determination:

> [T]he material alteration of the legal relationship between the parties requires a "judicial imprimatur on the change." <u>Buckhannon</u>, 532 U.S. at 605, 121 S.Ct. 1835; <u>see also</u> <u>CRST Van Expedited v. E.E.O.C.</u>, —– U.S. ——, 136 S.Ct. 1642, 1646, 194 L.Ed.2d 707 (2016) ("This change must be marked by judicial imprimatur." (quotation marks omitted)). Key to this determination is whether the change is enforceable or "judicially sanctioned" by the court. <u>See</u> <u>Buckhannon</u>, 532 U.S. at 604-05, 121 S.Ct. 1835; <u>Farrar</u>, 506 U.S. at 111, 113 S.Ct. 566; <u>John T.</u>, 318 F.3d at 560; <u>see also</u> <u>Buckhannon</u>, 532 U.S. at 622, 121 S.Ct. 1835 (acknowledging that a party cannot be considered

prevailing "unless there has been an enforceable alteration of the legal relationship of the parties" (quotation marks omitted) (Scalia, J., concurring)).

Raab v. City of Ocean City, New Jersey, 833 F.3d 286, 293 (3d Cir. 2016).

In its seminal decision in Buckhannon, the Supreme Court provided illustrative examples of the types of outcomes which bear a judicial imprimatur, stating that: "In addition to judgments on the merits, we have held that settlement agreements enforced through a consent decree may serve as the basis for an award of attorney's fees." Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res., 532 U.S. 598, 604, 121 S. Ct. 1835, 1840, 149 L. Ed. 2d 855 (2001).

The situations identified in Buckhannon in which a litigant may be deemed a prevailing party are illustrative, but are not meant to be exhaustive. However, cases construing Buckhannon have required some showing of a judicial imprimatur for success on a fees petition which seeks fees for work done in district court litigation. Cases interpreting this judicial imprimatur requirement have held that a favorable administrative determination which is legally enforceable in federal court through a consent decree satisfies this requirement. P.N. v. Clementon Bd. of Educ., 442 F.3d 848, 853 (3d Cir. 2006). However, success on a motion for preliminary injunction, standing alone, will not confer prevailing party status upon a litigant. Compare John T. ex rel. Paul T. v. Delaware Cty. Intermediate Unit, 318 F.3d 545, 559 (3d Cir.

2003) <u>with</u> <u>People Against Police Violence v. City of Pittsburgh</u>, 520 F.3d 226, 232 (3d Cir. 2008). Similarly, "this Court has held that 'stay put' orders which merely serve to maintain the status quo *pendente lite* do not afford meaningful relief on the merits of the underlying claims and will not suffice [to support a finding that a litigant is a prevailing party]." <u>People Against Police Violence v. City of Pittsburgh</u>, 520 F.3d 226, 232 (3d Cir. 2008) (citing <u>John T. ex rel. Paul T. v. Del. County Intermediate Unit</u>, 318 F.3d 545, 558-59 (3d Cir. 2003); <u>J.O. ex rel. C.O. v. Orange Twp. Bd. of Educ.</u>, 287 F.3d 267, 272-73 (3d Cir. 2002)).

If a party has attained prevailing party status, we must then determine the appropriate amount of a reasonable fee award. There are two aspects to the assessment. "The starting point for a determination of attorney's fees, the lodestar calculation, is the product of the number of hours reasonably expended in responding to the frivolous paper times an hourly fee based on the prevailing market rate." <u>Doering v. Union County Bd. of Chosen Freeholders</u>, 857 F.2d 191, 195 (3d Cir. 1988); <u>see also</u> <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983). The party seeking fees bears the burden of producing "sufficient evidence of what constitutes a reasonable market rate for the essential character and complexity of the legal services rendered. . . ." <u>Knight v. Drye</u>, 2009 U.S. Dist. LEXIS 82369 (M.D. Pa. Sept. 10, 2009) (quoting <u>McCutcheon v. America's Servicing Co.</u>, 560 F.2d 143, 150 (3d Cir. 1990)). <u>See also</u> <u>Pennsylvania v. Delaware Valley Citizens' Council for</u>

Clean Air, 478 U.S. 546, 564 (1986) (party seeking fees has the initial burden of presenting evidence that the claimed rates and time expended are reasonable).

The Third Circuit has instructed that determining a reasonable hourly rate generally "is calculated according to the prevailing market rates in the relevant community." Loughner v. Univ. of Pittsburgh, 260 F.3d 173, 180 (3d Cir. 2001); see also Interfaith Cmty. Org. v. Honeywell Int'l, Inc., 426 F.3d 694, 705 (3d Cir. 2005) (in most cases, the relevant market rate is the prevailing rate in the forum of the litigation). A court must not make a finding of reasonableness based on its own "generalized sense" of appropriateness, but instead "must rely on the record." Evans v. Port Auth. of N.Y. and N.J., 273 F.3d 346, 361 (3d Cir. 2001) (quoting Smith v. City of Phila. Housing Auth., 107 F.3d 223, 225 (3d Cir. 1997)). Courts are to "assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Maldonado v. Houstoun, 256 F.3d 181, 184 (3d Cir. 2001); Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990). The party seeking fees "bears the burden of establishing by way of satisfactory evidence, 'in addition to [the] attorney's own affidavits,' . . . that the requested hourly rates meet this standard." Washington v. Philadelphia Cty. Ct. of Common Pleas, 89 F.3d 1031, 1035 (3d Cir. 1996) (citing Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984)). The petitioning attorney's usual billing rate is typically a

starting point in this calculation, but it is not dispositive. <u>Loughner</u>, 260 F.3d at 180. Although the petitioning party has the burden of demonstrating that the requested hourly rates are reasonable, where the party opposing the asserted rate "has not produced contradictory evidence, the district court may not exercise its discretion to adjust the requested rate downward." <u>Ridley v. Costco Wholesale Corp.</u>, 217 Fed. App'x 130 (3d Cir. 2007) (quoting <u>Washington</u>, 89 F.3d at 036); <u>see also</u> <u>Black Grievance Committee v. Philadelphia Elec. Co.</u>, 802 F.2d 648, 652-53 (district court not free to disregard attorney's affidavit regarding reasonableness of hourly rate where the opposing party "filed no affidavit and offered no testimony contesting the accuracy of [the attorney's] statement with respect to charges by comparable practitioners").

This guidepost for determining attorneys' hourly rates, commonly known as the forum rate rule, is then subject to two exceptions:

> first, "when the need for 'the special expertise of counsel from a distant district' is shown"; and, second, "when local counsel are unwilling to handle the case." Both of these exceptions are sensible. Thus, when a party can show that it qualifies for either exception, the Court may award attorney fees based on prevailing rates in the community in which the parties' attorneys practice.

<u>Interfaith Cmty. Org. v. Honeywell Int'l, Inc.</u>, 426 F.3d 694, 705 (3d Cir. 2005) (citations omitted).

Once the court determines the appropriate hourly rate, it then turns to an assessment of the number of hours reasonably expended by counsel in the course of

the litigation. With respect to calculating the number of hours reasonably expended, the court "should review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are 'excessive, redundant, or otherwise unnecessary.' " Public Int. Research Group of N.J., Inc. v. Windall, 51 F.3d 1179, 1188 (3d Cir. 1995) (internal citation omitted); see also Dellarciprete, 892 F.2d at 1183 ("The district court should exclude hours that are not reasonably calculated."). In general, hours are not considered to have been reasonably expended "if they are excessive, redundant, or otherwise unnecessary." Id. The court may permissibly deduct hours from the fee award if the attorney inadequately documents the hours claimed. Id.

Once the petitioning party has made the preliminary showing described above, "the resulting product is presumed to be the reasonable fee to which counsel is entitled." Id. The burden then shifts to the party opposing the claimed fees by making specific objections to the proposed fee by way of an affidavit or brief. Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990). Upon consideration of the opposing party's objections, the court enjoys substantial discretion to adjust the lodestar and ultimate fee downward. Id.; see United States ex rel Sharon McKinney v. DHS Techs., LLC, No. 3:11-CV-146, 2015 WL 11675668, at *3-4 (M.D. Pa. Oct. 27, 2015), report and recommendation adopted sub nom. United States v. DHS Techs., LLC, No. 3:11-CV-146, 2016 WL 4592175 (M.D. Pa. Feb. 4, 2016).

Further, when calculating the proper scope of a fees award, these fees are not strictly limited solely to time spent on merits litigation. Rather, "[a] party entitled to an award of attorneys' fees is also entitled to reimbursement for the time spent litigating its fee application." Planned Parenthood of Cent. New Jersey v. Attorney Gen. of State of New Jersey, 297 F.3d 253, 268 (3d Cir. 2002) (citing Prandini v. Nat'l Tea Co., 585 F.2d 47, 53 (3d Cir. 1978)).

It is against these guideposts that we assess the fees petition in this case.

**B. Yeh was a Prevailing Party in the Agency Proceedings and is Entitled to a Fees Award for these Proceedings.**

At the outset, with respect to the administrative agency proceedings in this case, we find that Yeh was undoubtedly a prevailing party who is entitled to attorney's fees. After protracted administrative proceedings spanning two-and-one-half years, Yeh enjoyed complete success before the agency in the February 5, 2018, CAO decision granting Yeh videophone access.

Finding that Yeh plainly prevailed in these agency proceedings, we have undertaken a lodestar analysis of counsels' fees petition relating to these agency proceedings. At the outset, we conclude that the hourly rates claimed by plaintiffs' counsel are reasonable and appropriate. Counsel are experienced, seasoned litigators in the field of disability rights. The hourly rates cited in their fees' petition range between $300 and $375 per hour, an hourly rate which is commensurate with reasonable prevailing hourly rates recently determined by this court in other fees

litigation. See, e.g., Eckert v. Chauffeurs, Teamsters & Helpers Local Union 776 Profit Sharing Plan, No. 1:15-CV-1920, 2018 WL 4404657, at *7 (M.D. Pa. Sept. 17, 2018); Cmty. Ass'n Underwriters of Am., Inc. v. Queensboro Flooring Corp., No. 3:10-CV-1559, 2016 WL 1076910, at *5 (M.D. Pa. Mar. 18, 2016) (Mehalchick, M.J.) (collecting cases); United States ex rel. Sharon McKinney v. DHS Techs., LLC, No. 3:11-CV-146, 2015 WL 11675668, at *6 (M.D. Pa. Oct. 27, 2015) (Carlson, M.J.) (collecting cases), adopted by 2016 WL 4592175, at *6 (M.D. Pa. Feb. 4, 2016) (Mariani, J.); see also Cartagena v. Serv. Source, Inc., 328 F.R.D. 139, 145 (M.D. Pa. 2018) (collecting cases approving rates of between $250 and $325 per hour).

Notwithstanding the reasonableness of these hourly rates, the defendants invite us to employ the lower hourly rates contemplated by statute for certain types of criminal and prison litigation in this case instead of engaging in the lodestar analysis typically required in Rehabilitation Act litigation. See 18 U.S.C. § 3006A; 42 U.S.C. § 1997e. In accordance with the rising tide of legal authority, we will decline this invitation since courts generally agree that the fees ceilings set by these other statutes are inapplicable to attorneys' fees petitions brought pursuant to the Rehabilitation Act. See e.g., Armstrong v. Davis, 318 F.3d 965, 974 (9th Cir. 2003) ("The PLRA cap on attorney's fees . . . does not apply to fees awarded under the

ADA or the RA"); Hernandez v. Cty. of Monterey, 306 F.R.D. 279, 285 (N.D. Cal. 2015).

Having concluded that the hourly rate claimed by counsel for their work in these administrative proceedings was reasonable, we now consider the second element of this lodestar analysis: the reasonableness of the hours billed by counsel. On this score, the defendants raise four objections to the hours claimed by plaintiff's counsel during these administrative proceedings, arguing: (1) that the billings reflect unnecessary and duplicative hours since 2 or 3 counsel billed for attending a number of meetings, hearings, and proceedings involved in these agency proceedings; (2) that 3.8 hours spent communicating with Yeh's spouse should be excluded from this fees petition; (3) that 4.6 hours dedicated to administrative taskings in the course of these proceedings were excessive; and (4) that 6.8 hours dedicated to meeting with another prisoner in the course of these proceedings should also be excluded from the lodestar calculation. (Doc. 90, at 21-22).

Upon consideration, we will decline the defendants' invitation to deduct these hours from this lodestar calculation. In our view, plaintiff's counsel have sufficiently explained and justified each of these billing entries. For example, counsel have explained that the time spent interviewing another prisoner was related to this administrative litigation, since the prisoner was a potential witness in Yeh's administrative proceedings. Likewise, given the protracted nature of these

administrative and legal proceedings which have spanned several years, the 4.6 hours dedicated to administrative taskings challenged by the defendants do not seem excessive. Further, the 3.8 hours committed to communications with Yeh's spouse are entirely proper given the nature of this case, which involved barriers to communication for this profoundly deaf inmate. Since the gravamen of this case was that Yeh could not effectively communicate with his family and others, these family communication responsibilities fell to counsel, and counsel should be reimbursed for their modest commitment of time in serving as conduits of important case-related information between Yeh and his spouse.

Finally, we have carefully evaluated the defendants' assertions that the billing records relating to these administrative proceedings reflected multiple duplicative entries. While there are numerous entries recording the participation of two or three counsel in specific meetings and proceedings, the plaintiff's counsel have explained that this case was legally and factually complex. Several factors contributed to this complexity. For plaintiff's counsel, litigation of this matter involved unique challenges in terms of client communication, requiring the talents of attorneys skilled in American Sign Language (ASL). Counsel also had to navigate the technical complexities of competing hearing-impaired communication technologies, an element of proof that required a different technological skill set from the litigation team. Further, pursuit of Yeh's administrative claim called for specialized legal

knowledge and skill in the application and interpretation of the Rehabilitation Act. It is well-settled that in litigation like the instant case which presents legal and factual complexities, multiple counsel may properly bill for participation in specific hearings, meetings, and events. See U.S. ex rel. John Doe I v. Pennsylvania Blue Shield, 54 F. Supp. 2d 410, 415 (M.D. Pa. 1999). In the instant case, we find that the complexities presented here justified the participation of a litigation team with complementary skills.

Having found that these billing entries relating to the administrative proceedings in this case were presumptively reasonable, the burden shifted to the defendants to demonstrate that the fees request was improper; we enjoy substantial discretion in ruling upon these objections. Cartagena v. Serv. Source, Inc., 328 F.R.D. 139, 145 (M.D. Pa. 2018). In the instant case, we find that there has not been a sufficient showing by the defendants to set aside the administrative proceedings attorneys' fees sought by plaintiff's counsel. Accordingly, in the exercise of our discretion we will not engage in a *post hoc* critique of these case staffing decisions. Instead, having found that Yeh was a prevailing party in the administrative aspects of this litigation, and further concluding that the billing rates and hours spent by counsel on these administrative proceedings were objectively reasonable, we will award counsels' fees for these administrative proceedings. Counsel may also be reimbursed for their fees associated with the preparation of this complaint, since the

filing of the complaint was a necessary prerequisite to this fee application. <u>See</u> <u>M.G.</u> <u>v. E. Reg'l High Sch. Dist.</u>, 386 F. App'x 186, 187 (3d Cir. 2010). Finally, finding that the plaintiff's counsel are entitled to this substantial, albeit partial, fees recovery, we conclude that plaintiff's counsel may also be reimbursed for their fees in connection with the preparation and submission of this fees petition. <u>See</u> <u>Planned</u> <u>Parenthood of Cent. New Jersey v. Attorney Gen. of State of New Jersey</u>, 297 F.3d 253, 268 (3d Cir. 2002) (citing <u>Prandini v. Nat'l Tea Co.</u>, 585 F.2d 47, 53 (3d Cir.1978)).

### C. <u>We Will Decline to Order a Fees Award to Plaintiff's Counsel for the Litigation of the Preliminary Injunction Motion and District Court Merits Litigation.</u>

While we have found that the plaintiff was the prevailing party in the administrative aspect of this litigation, and have concluded that counsels' billing rates and hours claimed were reasonable, we have determined that plaintiff's counsel are not entitled to reimbursement for their work in the district court preliminary injunction and merits litigation. In reaching this result, we acknowledge that this is a close question. We also concede that the district court litigation brought by counsel may well have served as a further catalyst prompting completion of the Department of Justice's commitment to provide videophone access to Yeh. However, to justify a fee award, it is not enough to say that the plaintiff's lawsuit was a "catalyst" which inspired timely action by the defendants. <u>Buckhannon Bd. & Care Home, Inc. v. W.</u>

Virginia Dep't of Health & Human Res., 532 U.S. 598, 609, 121 S. Ct. 1835, 1843, 149 L. Ed. 2d 855 (2001). Rather, it must be shown both that the district court litigation resulted in a material alteration of the legal relationship of the parties, Ward v. Philadelphia Parking Auth., 634 F. App'x 901, 903 (3d Cir. 2015) (footnotes omitted) (emphasis in original), and that there was a judicial imprimatur on the change. Buckhannon, 532 U.S. at 605.

Bound by these legal guideposts, we note that at the time of the filing of this lawsuit, the status of Yeh's request for videophone technology under the RA was as follows: As a result of extensive administrative proceedings, the Department of Justice and Bureau of Prisons had agreed that Yeh was entitled to receive such technology, and had committed to providing this technology to the plaintiff. At the same time, however, Yeh had been informed that the process of installing such technology would be laborious and time-consuming and he had been urged to exercise patience.

The plaintiff filed this lawsuit in May of 2018. From that time until full videophone technology access was provided to him in December of 2018, the defendants' position remained the same, and was completely consistent with their legal posture prior to the filing of the complaint. The defendants were steadfast in their commitment to secure access to this technology for Yeh, as directed by the Department of Justice. The defendants, however, were also sober and realistic in

their evaluation of the technological and logistical obstacles which needed to be overcome before they could provide such technological access to Yeh. As the defendants persuasively demonstrated during the preliminary injunction hearing conducted in this case, there were many steps involved in the process of providing videophone access to Yeh at FCI Schuylkill, including infrastructure installation, internet service acquisition from private vendors, and ensuring adequate institutional security. Further, several crucial steps in this process relied upon outside third-party contractors who were not parties to this litigation. As the Department had warned Yeh prior to the initiation of this lawsuit, overcoming these obstacles took time, but within six months, the Department was able to fulfill the commitment it had made to Yeh prior to Yeh commencing this litigation and provided the plaintiff with access to technology that all parties agreed met the requirements of the RA.

Taking all of these factors into consideration—the Department's longstanding and good faith commitment to meet the plaintiff's needs as well as the many hurdles which had to be overcome in order to address those needs—the district court declined to grant the preliminary injunction sought by Yeh. This decision by the court was telling in terms of evaluating whether the plaintiff prevailed in this aspect of the litigation since success on a motion for preliminary injunction, standing alone, will not confer prevailing party status upon a litigant. Compare John T. ex rel. Paul T. v. Delaware Cty. Intermediate Unit, 318 F.3d 545, 559 (3d Cir. 2003) with People

Against Police Violence v. City of Pittsburgh, 520 F.3d 226, 232 (3d Cir. 2008). Rather, success on a motion for preliminary injunction only confers prevailing party status upon a litigant if that success materially alters the legal relationship between the parties. Id. Here, Yeh did not prevail in his preliminary injunction motion, and Yeh's lack of success on that motion was largely a function of the fact that the evidence indicated that the Bureau of Prisons was working in good faith to fulfill the commitment it had made to Yeh prior to him filing this lawsuit, a commitment to abide by the agency's administrative ruling requiring installation of improved hearing-impaired communication technology at the prison.

While we instituted a program of judicial oversight designed to monitor the progress of these efforts, we do not believe that this oversight program rose to the level of court intervention which justified characterizing the plaintiff as a prevailing party whose success was cloaked in a judicial imprimatur. Rather, this program of judicial oversight merely confirmed and ensured that the defendants followed through on the commitments which they had made to Yeh prior to the filing of this lawsuit. Viewed in light of this pre-existing commitment by the Bureau of Prisons to provide videophone access to Yeh, we consider our oversight program to have been akin to a stay put order, requiring the parties to continue upon the path they had previously set for themselves. Moreover, in the course of our oversight, we never found the Bureau of Prisons' efforts to be inadequate or wanting, and we never

entered orders prescribing specific actions which needed to be completed by prison officials. We refrained from doing so because the periodic reports provided by the defendants left us convinced that the defendants were engaged in a good faith effort to fulfill the promises which they had made to Yeh at the close of the administrative hearings. As such, this judicially mandated stay put program and oversight is not sufficient to satisfy the prevailing party standards prescribed by Buckhannon and its progeny. People Against Police Violence v. City of Pittsburgh, 520 F.3d 226, 232 (3d Cir. 2008) (citing John T. ex rel. Paul T. v. Del. County Intermediate Unit, 318 F.3d 545, 558-59 (3d Cir. 2003); J.O. ex rel. C.O. v. Orange Twp. Bd. of Educ., 287 F.3d 267, 272-73 (3d Cir. 2002)).

Further, once Yeh was provided with access to this hearing-impaired technology, he used that technology without the need for further judicial intervention until he was released from custody. Finally, upon Yeh's release, the district court dismissed this case, finding that the actions taken by the defendants and Yeh's release from imprisonment had rendered this dispute moot.[1]

---

[1] This factual background stands in stark contrast to the prevailing party cases cited by the plaintiff, where a defendant either resisted providing services mandated by law until he eve of trial, Miraglia v. Bd. Of Supervisors La. State Museum, 901 F.3d 565 (5th Cir. 2018), or the district court felt compelled to provide specific direction to the Bureau of Prisons regarding its responsibilities to perform acts by a date certain. Berke v. Federal Bureau of Prisons, 942 F. Supp. 2d 71 (D.D.C. 2013). In contrast, in this case, the defendants had committed to providing Yeh certain services prior to the filing of the complaint, and remained steadfast in their commitment throughout this litigation, requiring nothing more than a judicial oversight program

Thus, while we conclude that the plaintiff's decision to institute this lawsuit was prudent, commendable, potentially catalytic, and entirely proper, in order to allow a fees award for Yeh's success in administrative proceedings, we find that Yeh has not met the standards necessary to support prevailing party status in the course of the preliminary injunction and merits litigation before the district court. Therefore, we will decline to award attorneys' fees for this aspect of the litigation conducted in this case.

In summary, plaintiff's counsel are entitled to a fees award for the work they performed in the administrative proceedings in this case, along with their work in preparing the complaint which allowed the court to consider their administrative proceedings fees, as well as the time spent litigating this fees petition. The plaintiff's counsel's petition for attorneys' fees for district court preliminary injunction and merits litigation, however, will be disallowed.

Having made these legal findings, we believe that in the first instance the parties should attempt to reach a consensus on the proper scope of a fees award consistent with this opinion. Accordingly, we will direct the parties to consult, confer and either present us with a stipulated fees amount consistent with this opinion, or make a joint submission identifying those fees matters which remain in dispute.

---

which was little more than a stay put order, requiring parties to continue on the path they had previously embarked upon.

An appropriate order follows.

DATED:     March 30, 2020

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN TC YEH,                    :    Civil No. 3:18-CV-943
                               :
    Plaintiff,             :
                               :
    v.                     :
                               :    (Magistrate Judge Carlson)
UNITED STATES                   :
BUREAU OF PRISONS, et al.,       :
                               :
    Defendants.             :

## ORDER

AND NOW this 30th day of March 2020, in accordance with the accompanying Memorandum Opinion, IT IS ORDERED that the plaintiff's motion for attorneys' fees, (Doc. 84), is GRANTED in part as follows: Plaintiff's counsel are entitled to a fees award for the work they performed in the administrative proceedings in this case, along with their work in preparing the complaint which allowed the court to consider their administrative proceedings fees, as well as the time spent litigating this fees petition. The plaintiff's counsel's petition for attorneys' fees for district court preliminary injunction and merits litigation, however, will be disallowed.

IT IS FURTHER ORDERED that on or before **May 1, 2020**, the parties shall consult, confer and either present us with a stipulated fees amount consistent with

this opinion, or make a joint submission identifying those fees matters which remain

in dispute.

*S/Martin C. Carlson*
MARTIN C. CARLSON
United States Magistrate Judge